## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-cr-339 (ACR)** |
| | ) | |
| **ETHAN MAUCK (1)** | ) | |
| **PETER WILLEY (2)** | ) | |
| _____ | ) | |

## JOINT MOTION TO DISMISS COUNTS TWO-FOUR OF THE INDICTMENT

The defendants, Peter Willey and Ethan Mauck, file this motion to dismiss

Counts Two through Four of the Indictment filed against him on September 27,

2023 (ECF No. 13), pursuant to Fed. R. Crim. P. 12(b).  For the reasons discussed

below, these counts fail to state an offense and fail to give proper notice to the

defendant.[1]

## BACKGROUND

On August 30, 2023, Mr. Willey and Mr. Mauck were charged via Criminal

Complaint with alleged violations of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a)(1)

and (2), and 40 U.S.C. § 5104 (e)(2)(D). *See* ECF No. 1. The government then filed

---

[1] Mr. Willey and Mr. Mauck understand that this and other courts in this jurisdiction have
denied similar motions to dismiss over the past two year. *See, e.g., United States v. Bingert*,
605 F. Supp. 3d 111 (D.D.C. 2022); *United States v. Griffin*, 549 F. Supp. 3d 49 (D.D.C.
2021); *United States v. Sandlin*, 575 F. Supp. 3d 16 (D.D.C. 2021); *United States v.
Caldwell*, 581 F. Supp. 3d 1 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9
(D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54 (D.D.C. 2021); *United
States v. Nordean*, 579 F. Supp. 3d 28 (D.D.C. 2021); *United States v. McHugh*, 583 F. Supp.
3d 1 (D.D.C. 2022); *United States v. Andries*, 2022 WL 768684 (D.D.C. Mar. 14, 2022);
*United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022).

an Indictment alleging the same charges on September 27, 2023. *See* ECF No. 13. A bench trial on these charges is scheduled for August 26, 2024.

The government alleges that Mr. Willey and Mr. Mauck illegally entered the Capitol grounds on January 6, 2021.  *See* ECF No. 1-1, Statement of Facts.  The government further alleges that Mr. Willey and Mr. Mauck engaged in disorderly conduct while on the Capitol grounds and that they illegally paraded, demonstrated and picketed on the Capitol grounds.  *Id*.

## LEGAL AUTHORITY

The charging document must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  It "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution for the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury."  *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.C. Cir. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)).  A criminal defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(3).  Rule 12 provides that a defendant may also move to dismiss the [charging document] for "failure to state an offense" and "lack of specificity."  Fed. R. Crim. P. 12(b)(3)(B)(iii),(v).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites

arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)).  "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997).  The "void-for-vagueness doctrine" protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

The rule of lenity applies if the terms of the statute are ambiguous; once it is determined that a statute is ambiguous, the rule of lenity "requires that the more lenient interpretation prevail." *United States v. R.L.C.*, 503 U.S. 291, 293 (1992). This rule is rooted in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *Id.* at 305 (quoting *United States v. Bass*, 404 U.S. 348, 336 (1971)).  The Courts have "[r]eserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* (citing *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  "Whether a statutory term is unambiguous … does not turn solely on dictionary definitions of its component words.  Rather, 'the plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole. *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

## ARGUMENT

### I.   <u>18 U.S.C. § 1752 fails to state an offense.</u>

#### a.  The United States Secret Service is the Entity that May Designate "Restricted Areas" Under the Statute, Not the United States Capitol Police.

Mr. Willey and Mr. Mauck are charged with two counts of violating 18 U.S.C. § 1752 for "entering and remaining in a Restricted Building or Grounds," and engaging in "disorderly and disruptive conduct in a Restricted Building or Grounds."  *See* Indictment, ECF No. 13.  When this statute was enacted, it is clear that the purpose was to designate the United States Secret Service ("USSS") to restrict areas for temporary visits by the President.  *See* S. Rep. No. 91-1252 (1970). At the time of enactment, the USSS was part of the Treasury.  Section 1752 grants the Treasury Secretary the authority to "designate by regulations the buildings and grounds which constitute the temporary residences of the President."  18 U.S.C. § 1752(d)(1).  It also allows the Secretary "to prescribe regulations governing ingress or egress to such buildings and grounds to be posted, cordoned off, or otherwise restricted areas where the President may be visiting."  *Id*. § 1752(d)(2).  There is nothing in the legislative history (or the statutory language) to suggest that anyone other than the USSS has the authority to so restrict the areas surrounding the Capitol building.

The USSS's duties and responsibilities are outlined in 18 U.S.C. § 3056, which include:

> (e)(1): When directed by the President, the United States Secret Service is authorized to participate, under the direction of the Secretary of

Homeland Security, in the planning, coordination, and implementation of security operations at special events of national significance, as determined by the President.

(2) At the end of each fiscal year, the President through such agency or office as the President may designate, shall report to the Congress--

- what events, if any, were designated special events of national significance for security purposes under paragraph (1); and

- the criteria and information used in making each designation.

*Id*. § 3056(e)(1)(2)(A)(B).  The statute does not state that any other agency is permitted to designate events for security purposes and only explains that the USSS would be under the designation of the Department of Homeland Security instead of the Treasury Department.  The statute makes the exclusive role of the USSS even clearer in § 3056(g), which states:

(g) The United States Secret Service shall be maintained as a *distinct entity* within the Department of Homeland Security and shall not be merged with any other Department function. *No personnel and operational elements of the United States Secret Service shall report to an individual other than the Director of the United States Secret Service*, who shall report directly to the Secretary of Homeland Security without being required to report through any other official of the Department.

(emphasis added).

### b. The Government Does Not Allege that the Secret Service Restricted the Capitol Grounds on January 6, 2021.

The Indictment charges Mr. Willey and Mr. Mauck with remaining or entering "restricted building or grounds," however it does not allege that the USSS designated that area as being restricted.  Nor could it do so now because in *United States v. Griffin*, the government conceded that it was the United States Capitol Police that attempted to designate the area as restricted that day and not the

USSS.  21-CR-92 (TNM) at ECF No. 33.[2]  The court in *Griffin* (as well as other district courts) denied a motion to dismiss a § 1752 charge on the ground that the statute (Congress) did not specifically state who must designate the "restricted areas."  *Griffin*, ECF No. 41.

However, the plain language of 18 U.S.C. § 1752(c)(1)(B), defines "restricted building or grounds" as a "building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  Since it is the Secret Service who protects the President or "other person," it is the Secret Service who must designate the area "restricted."  The legislative history bolsters this interpretation.[3]

The court in *Griffin* also hypothesized that the President would be unable to rely on the military fortification at Camp David already in existence when he visits that facility if the Secret Service was the only entity with the statutory authority to restrict the area.  *See Griffin*, ECF No. 41 at 11.  However, Camp David is a military installation and is not a "public forum" that needs an entity to "cordon off" areas and restrict them in light of a Presidential visit.  Military bases have security

---

[2] There have also been many January 6 trials where US Capitol Police officers have testified that they were the entity that restricted the area surrounding the Capitol grounds and not the United States Secret Service.

[3] Congress enacted 18 U.S.C. § 1752 as part of the Omnibus Crime Control Act of 1970. Public Law 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan 2. 1971).  At that time, the USSS was a part of the Treasury Department.  The Senate Judiciary Committee report accompanying the current version of § 1752 noted that there was no federal statute that specifically authorized the Secret Service to restrict areas where the President maintains temporary residences and the senators explained that the key purpose of the bill was to provide that authority to the Secret Service.  S. Rep. No. 91-1252 (1970).

and are not otherwise open to the public.  And each military installation is subject to other laws that protect the facility, and those within it, from intruders.  *See, e.g.*, 18 U.S.C § 1382 (barring any person from entering any military installation for any purpose prohibited by law).  Military bases are heavily guarded and have entrance and exit points and are different than federal buildings that need sections to be "cordoned" off in order for the general public to know which area is restricted.  For these reasons, the example offered by the *Griffin* court is inapposite and does not support the court's decision.

Furthermore, if a deficiency in a statute creates an absurd result or creates arbitrary enforcement, it should not be enforced until it is amended to provide clarity and provide fair notice to a defendant.  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  The *Griffin* court's reasoning creates a different kind of absurd result— anyone claiming to be a part of law enforcement could post a sign designating an area as restricted and a criminal defendant could then be penalized for trespassing because they "willfully" ignored the sign.

> **c. Even if the Capitol Police were Authorized to Restrict the Grounds, 18 U.S.C. § 1752 is Not Applicable Because Former Vice President Pence Was Not "Temporarily Visiting" the Capitol Building on January 6, 2021.**

Under the plain language of 18 U.S.C. § 1752, the statute does not apply here.  Section 1752 prohibits conduct in or near "any restricted building or grounds."  The statute expressly defines the term "restricted buildings or grounds" as follows:

(1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(A) of the White House or its grounds, or the Vice President's official residence or its grounds;

(B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c); *see United States v. Samira Jabr*, Criminal No. 18-0105, Opinion at 12, ECF No. 31 (D.D.C. May 16, 2019), *aff'd*, 4 F.4th 97 (D.C. Cir. 2021).

Counts Two and Three of the Indictment charge Mr. Willey and Mr. Mauck with conduct "in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area *within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting . . . ." See* ECF No. 13, (emphasis added).  The government's attempt to shoehorn Mr. Willey's and Mr. Mauck's conduct into the statute fails.  Accordingly, those two counts should be dismissed.

The "United States Capitol and its grounds" do not automatically constitute "restricted buildings or grounds" under any prong of § 1752(c)(1).  Nor did the Capitol grounds become "restricted grounds" on January 6, 2021, because of a *temporary* vice-presidential visit.

The plain meaning of "temporary" is "lasting for a time only."  Black's Law Dictionary (11th Ed. 2019).  "Visiting" is defined as "invited to join or attend an institution for a limited time."  Merriam-Webster (2021).  Together, the phrase

"temporarily visiting" connotes temporary travel to a location where the person does not normally live or work on a regular basis.

The former Vice President was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia, where he lived and worked. Moreover, he actually worked at the Capitol Building and grounds—it was his place of employment. In his official capacity as the "President of the Senate," he had a permanent office "within the United States Capitol and its grounds." The Vice President was not "visiting" the Capitol Building, he was working there, carrying out his sworn official duties to by "presiding," over the vote count ceremony. *See* 3 U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall *meet* in the Hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer*.") (emphasis added).

Past cases support this plain, common-sense reading of the statute, as they involve conduct in and near areas where the President and Vice President were clearly "temporarily visiting." *See, e.g., United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (defendant entered and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally); *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (defendant pushed his way through a restricted area where then Vice President George Bush was speaking at a rally at a park in Los Angeles that was secured by United States Secret Service agents); *Blair*

*v. City of Evansville, Ind*. 361 F. Supp. 2d 846 (S.D. Ind. 2005) (defendant charged with 18 U.S.C. § 1752 at protest during then Vice President Richard Cheney's visit to the Centre in Evansville, Indiana).  These cases all involve the President and Vice President actually traveling outside of D.C., where they live and work, and "visiting" another location for a "temporary" purpose.  As a result, those cases are entirely consistent with the plain meaning of § 1752(c)(1)(B).

Here, by contrast, former Vice President Pence was not traveling to a speaking event or a political rally.  He was meeting with other government officials in a federal government building where he had a permanent office as part of fulfilling his official duties as Vice President of the United States/President of the Senate.  Thus, he was not "temporarily visiting" the Capitol building as required by the plain language of 18 U.S.C. § 1752.

Lastly, testimony from past January 6 trials have revealed that the Vice President's visit was not the reason for the expanded restricted perimeter but rather it was due to the inaugural stage in construction, COVID-19 restrictions, and the Electoral Vote Event.  *See United States v. Gossjankowski*, 21-cr-123 (PLF), Trial Transcript Volume VI on March 7, 2023, at 1133-34.  In *Gossjankowski*, Secret Service Agent Lanelle Hawa testified that the area around the Capitol Building was not specifically restricted because the Vice President was going to be there.  *Id.*  She also testified that the Vice President does maintain a permanent office in the Capitol building.  *Id*. at 1134.  Therefore, the government's claim that Mr. Willey and Mr. Mauck were inside a restricted area where the Vice President was

temporarily visiting is contradicted by the government's own evidence that has shown there were many reasons the area had an expanded perimeter, the temporary visit of the Vice President not being one of them.

For the above reasons, § 1752 does not apply as charged and Counts Two and Three of the Indictment should be dismissed.

## II.   The Indictment Fails to Provide Necessary Allegations of Fact to Properly State an Offense under 40 U.S.C. § 5104 (e)(2)(D).

Under 40 U.S.C. § 5104(e)(2)(D) "an individual or group of individuals may not willfully and knowingly … utter loud, threatening, or abusive language or engage in disorderly or disruptive conduct with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, any deliberations of, a committee of Congress or either House of Congress."

The affidavit in support of the criminal complaint alleges that Mr. Willey "approached the U.S. Capitol grounds from the west side," "mad[e] [his] way to the Lower West Plaza," "placed his hands on [a] billboard's frame and pushed it toward the police line," entered the tunnel, and passed a police shield toward a line of officers.  ECF Dkt. No. 1-1.  Besides this bare bones allegation, the government does not allege that Mr. Willey specifically engaged in disorderly or disruptive conduct. Simply being present on the Capitol grounds and passing items is not sufficient to allege that Mr. Willey was engaging in disorderly or disruptive conduct.  The affidavit also does not allege that Mr. Willey was uttering in loud or abusive language.

It is unclear, based on the criminal complaint, the affidavit supporting it, or the indictment, what behavior is threatening, disorderly, or disruptive. The affidavit alleges that "[T]he mob violently confronted the officers standing guard in the police line. The bike racks became displaced and a struggle ensued. During the struggle, Mauck picked up a downed police bike rack and shoved it toward an officer dressed in riot gear." ECF No. 1-1. Mr. Mauck must then assume that this is the behavior that Government alleged violated 40 U.S.C. § 5104(e)(2)(D). However, this basic allegation that Mr. Mauck picked up a bike rack and placed it back on the ground (thus putting a police barrier back up from where it had fallen) does not adequately allege disorderly or disruptive conduct.

For these reasons, Count Four of the Indictment fails to state an offense and should be dismissed.[4]

---

[4] Count Three of the Indictment charging Mr. Willey and Mr. Mauck with engaging in disorderly and disruptive conduct in an otherwise restricted area in violation of 18 U.S.C. §1752(a)(2), also fails to state an offense for the same reasons already stated—that there is no allegation that Mr. Willey or Mr. Mauck engaged in any disorderly or disruptive conduct.

## **CONCLUSION**

For all of reasons discussed above, the Court should dismiss counts two through four of the pending Indictment against Peter Willey and Ethan Mauck.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
Diane Shrewsbury
Ubong Akpan
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

MARY MAGUIRE
FEDERAL PUBLIC DEFENDER
For the Western District of Virginia

/s/
_____
B. F. Diehl
Assistant Federal Public Defender
210 First Street, SW, Suite 400
Roanoke, VA. 24011
(540) 777-0891
FL Bar No.: 0124667