# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 23-CR-339 (ACR)** |
| | : | |
| **ETHAN MAUCK and** | : | |
| **PETER WILLEY,** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT ONE

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

MATTHEW E. VIGEANT
Assistant United States Attorney
D.C. Bar No. 144722
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-2423
matthew.vigeant@usdoj.gov

JULIE BESSLER
Assistant United States Attorney
PA Bar No. 328887
601 D Street N.W.
Washington, D.C. 20530
(202) 809-1747
Julie.Bessler@usdoj.gov

CRAIG ESTES
Assistant U.S. Attorney
Mass. Board of Bar Overseers #670370
Capitol Siege Section Detailee
U.S. Attorney's Office
District of Massachusetts
(617) 748-3100
Craig.Estes@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

LEGAL STANDARD............................................................................................. 2

ARGUMENT ........................................................................................................ 4

  I.  Section 231(a)(3) Is Neither Unconstitutionally Vague Nor Overbroad; Its Terms Are Clear On Their Face And Do Not Sweep Broadly ........................................................... 4

    A. The Vagueness and Overbreadth doctrines........................................................ 5

    B. Section 231(a)(3) is not void for vagueness; its terms are clear ....................... 8

    C. Section 231(a)(3) is narrowly tailored, focuses on conduct, and is not overbroad........... 13

  II. Congress Validly Exercised Its Constitutional Authority When It Enacted 18 U.S.C. § 231(a)(3) ......................................................................................... 17

    A. Congress properly exercised its Article I, Section 8, Clause 17 to prohibit Mauck and Willey's conduct inside the District of Columbia............................................. 18

    B. The defendants' Commerce Clause challenge is meritless in its own right .................... 22

  III. The Indictment Adequately Alleges That The Defendants Interfered With A Federally Protected Function.......................................................................... 28

CONCLUSION.................................................................................................... 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973)................................................................................ 7

*City of Houston v. Hill,*
482 U.S. 451 (1987)............................................................................ 15, 16

*Coates v. Cincinnati,*
402 U.S. 611 (1971)................................................................................ 6

*Darnell v. Markwood,*
220 F.2d 374 (D.C. Cir. 1954)................................................................ 20

*Descamps v. United States,*
570 U.S. 254 (2013)............................................................................ 30, 31

*Edwards v. D.C.,*
755 F.3d 996 (D.C. Cir. 2014)................................................................ 6

*Elonis v. United States,*
575 U.S. 723 (2015)................................................................................ 11

*Grayned v. City of Rockford,*
408 U.S. 104 (1972)................................................................................ 6

*Hamling v. United States,*
418 U.S. 87 (1974)............................................................................. 2, 29

*Hill v. Colorado,*
530 U.S. 703 (2000)................................................................................ 13

*Hyde v. S. Ry. Co.,*
31 App. D.C. 466 (D.C. Cir. 1908)......................................................... 19

*Johnson v. United States,*
576 U.S. 591 (2015)......................................................................... 5, 6, 8, 9

*Kolender v. Lawson,*
461 U.S. 352 (1983)................................................................................ 9

*Members of City Council of L.A. v. Taxpayers for Vincent,*
466 U.S. 789 (1984)............................................................................. 6, 7

*Nat'l Mobilization Comm. to End War in Viet Nam v. Foran,*
411 F.2d 934 (7th Cir. 1969) .............................................................. 11, 14

*Neild v. District of Columbia,*
110 F.2d 246 (D.C. Cir. 1940)............................................................ 18, 19

*Palmore v. United States,*
411 U.S. (1973).................................................................................. 18, 20

*Posters 'N' Things, Ltd. v. United States,*
511 U.S. 513 (1994)................................................................................ 5

*Scarborough v. United States,*
431 U.S. 563 (1977)................................................................................ 23

*Sec'y of State of Md. v. Joseph H. Munson Co.,*
467 U.S. 947 (1984)................................................................................ 6

*Skilling v. United States*,
  561 U.S. 358 (2010) ........................................................................................... 5
*Terry v. Reno*,
  101 F.3d 1412 (D.C. Cir. 1996) ...................................................................... 25
*United States v. Bailey*,
  444 U.S. 394 (1980) ........................................................................................... 3
*United States v. Bingert et al.*,
  605 F. Supp. 3d 111 (D.D.C. 2022) ........................................................... 1, 13
*United States v. Brice*,
  926 F.2d 925 (9th Cir. 1991) ......................................................................... 10
*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017) .................................................................... 5, 6
*United States v. Carson*,
  455 F.3d 336 (D.C. Cir. 2006) ....................................................................... 21
*United States v. Cassel*,
  408 F.3d 622 (9th Cir. 2005) .......................................................................... 11
*United States v. DeLaurentis*,
  230 F.3d 659 (3d Cir. 2000)........................................................................... 30
*United States v. Featherston*,
  461 F.2d 1119 (5th Cir. 1972) ......................................................................... 9
*United States v. Fleury*,
  20 F.4th 1353 (11th Cir. 2021) ....................................................................... 7
*United States v. Gilbert*,
  813 F.2d 1523 (9th Cir. 1987) ......................................................................... 7
*United States v. Gonzalez*,
  2020 WL 6342948 (D.D.C. Oct. 29, 2020) .................................................. 3, 6
*United States v. Gossjankowski*,
  2023 WL 130817 (D.D.C. Jan. 9, 2023*)* ................................................... 4, 13
*United States v. Grider*,
  617 F. Supp. 3d 42 (D.D.C. 2022) ................................................ 5, 17, 20, 21
*United States v. Haldeman*,
  559 F.2d 31 (D.C. Cir. 1976) ........................................................................... 2
*United States v. Harmon*,
  2021 WL 1518344 (D.D.C. Apr. 16, 2021) ..................................................... 6
*United States v. Hill*,
  927 F.3d 188 (4th Cir. 2019) ......................................................................... 26
*United States v. Howard*,
  2021 WL 3856290 (E.D. Wis. Aug. 30, 2021) .................................. 16, 25, 27
*United States v. Joseph*,
  23-cr-0035 (RC), April 25, 2024 Order, ECF No. 163 ................................. 30
*United States v. Knowles*,
  197 F. Supp. 3d 143 (D.D.C. 2016) ................................................................. 3
*United States v. Lamotta*,
  22-cr-320 (JMC), Feb. 22, 2024 Minute Entry ................................... 1, 4, 30
*United States v. Lee*,
  23-cr-368 (TNM), May 5, 2024 Minute Order ................................................ 4

*United States v. Lopez*,
   514 U.S. 549 (1995)............................................................................................................*passim*

*United States v. Mahdi*,
   598 F.3d 883 (D.C. Cir. 2010) ...................................................................................................... 21

*United States v. McHugh*,
   2022 WL 1302880 (D.D.C. May 2, 2022).................................................................................... 3

*United States v. McHugh*,
   583 F. Supp. 3d 1 (D.D.C. 2022) ...........................................................................................*passim*

*United States v. Mechanic*,
   454 F.2d 849 (8th Cir. 1971) .............................................................................................. 11, 14

*United States v. Mock*,
   2023 WL 3844604 (D.D.C. June 6, 2023) ............................................................................. 4, 13

*United States v. Morrison*,
   529 U.S. 598 (2000) ........................................................................................................ 18, 20, 24

*United States v. Mostofsky*,
   579 F. Supp. 3d 9 (D.D.C. 2021) ...........................................................................................*passim*

*United States v. Nabors*,
   45 F.3d 238 (8th Cir. 1995) ........................................................................................................ 30

*United States v. Nat'l Dairy Products Corp.*,
   372 U.S. 29 (1963) ........................................................................................................................ 6

*United States v. Nordean*,
   579 F. Supp.3d 28 (D.D.C. 2021) ..........................................................................................*passim*

*United States v. Phomma*,
   561 F. Supp. 3d 1059 (D. Or. 2021) ................................................................... 13, 16, 24, 25

*United States v. Pope*,
   613 F.3d 1255 (10th Cir. 2010) ................................................................................................... 3

*United States v. Pugh*,
   90 F.4th 1318 (11th Cir. 2024) ........................................................................................... 16, 27

*United States v. Pugh*,
   No. 20-cr-00073, ECF No. 95 (S.D. Ala., May 13, 2021)...................................................... 25

*United States v. Reed*,
   2017 WL 3208458 (D.D.C. July 27, 2017)........................................................................ 22, 23

*United States v. Rundo*,
   990 F.3d 709 (9th Cir. 2021) ....................................................................................................... 7

*United States v. Rupert*,
   2021 WL 1341632 (D. Minn. Jan. 6, 2021) .............................................................................. 13

*United States v. Samsel*,
   21-cr-537 (JMC), Order, ECF No. 240................................................................... 4, 5, 8, 11

*United States v. Sargent*,
   2022 WL 1124817 (D.D.C. Apr. 14, 2022) .............................................................................. 30

*United States v. Stevens*,
   559 U.S. 460 (2010)............................................................................................................... 6, 15

*United States v. Verrusio*,
   762 F.3d 1 (D.C. Cir. 2014) ................................................................................................... 2, 28

*United States v. Walsh,*
  194 F.3d 37 (2d Cir. 1999)................................................................................ 29
*United States v. Warnagiris,*
  2023 WL 6926491 (D.D.C. Oct. 19, 2023) ....................................................... 30
*United States v. White,*
  610 F.3d 956 (7th Cir. 2010) ............................................................................ 29
*United States v. Williams,*
  2022 WL 2237301 (D.D.C. June 22, 2022)................................................. *passim*
*United States v. Williams,*
  553 U.S. 285 (2008)................................................................. 5, 7, 10, 15
*United States v. Williamson,*
  903 F.3d 124 (D.C. Cir. 2018) ..................................................................... 2, 28
*United States v. Wood,*
  2021 WL 3048448 (D. Del. July 20, 2021) ............................................... *passim*
*United States v. Yakou,*
  428 F.3d 241 (D.C. Cir. 2005) ...................................................................... 3, 28
*Virginia v. American Booksellers Ass'n,*
  484 U.S. 383 (1988) ........................................................................................... 7
*Virginia v. Hicks,*
  539 U.S. 113 (2003) ........................................................................................... 7
*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ........................................................................................... 8
*Washington State Grange v. Washington State Republican Party,*
  552 U.S. 442 (2008) ........................................................................................... 6

## Statutes

U.S. Const. Art. I ............................................................................................. 18, 20
2 U.S.C. § 1961 ..................................................................................................... 29
15 U.S.C. §§ 1, 2 .................................................................................................. 20
18 U.S.C. § 231(a)(3)..................................................................................... *passim*
U.S.C. § 232(C) .................................................................................................... 17
U.S.C. §§ 232(1), 232(2), 232(3), 232(6), 232(7) ......................... 8, 19, 26, 28
18 U.S.C. § 922(q)(1)(A) ..................................................................................... 18
18 U.S.C. § 1202(a) .............................................................................................. 24
18 U.S.C. § 1509 ................................................................................................... 10
18 U.S.C. § 1510(a) ................................................................................................ 9
18 U.S.C. §§ 1512(b)(1) ....................................................................................... 10
18 U.S.C. § 1959 ................................................................................................... 21
18 U.S.C. § 2237 ................................................................................................... 10
26 U.S.C. § 7212(a) .............................................................................................. 10
42 U.S.C. § 13981(b) ............................................................................................ 18

## Rules

Fed. R. Crim. P. 7(c)(1) .................................................................................... 2, 28
Fed. R. Crim. P. 12(b)(1) ....................................................................................... 2

## INTRODUCTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendants' motion to dismiss Count One. ECF No. 32. The Court should deny the motion because 18 U.S.C. § 231(a)(3) is not unconstitutionally vague or overbroad, Congress properly exercised its powers under Article I, Section 8, Clauses 3 and 17 to enact 18 U.S.C. § 231(a)(3), and the Indictment adequately identifies a federally protected function. The defendants' claims merely parrot arguments that have been repeatedly considered and rejected by courts in this District, as they concede on the first page of their brief.[1] Nothing warrants a different result in this case. The defendants' motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The government refers the Court to the Statement of the Offense filed in this case for a summary of the timeline of events during the attack on the U.S. Capitol on January 6, 2021, and defendants Ethan Mauck and Peter Willey's conduct during the riot. ECF No. 1-1.

On September 27, 2023, a four-count indictment was filed charging Mauck and Willey with criminal conduct on January 6, 2021. ECF No. 13. In Count One, the indictment alleges, in part, that Mauck and Willey:

> committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, an officer from the Metropolitan Police Department, lawfully engaged in the lawful performance of his/her duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function

---

[1] The defendants note that their arguments have been rejected in the following cases, which are just a subset of the rulings rejecting identical motions raised by other January 6 defendants: *United States v. Lamotta*, No. 22-cr-320 (JMC), Feb. 22, 2024 Minute Entry; *United States v. Bingert*, 605 F. Supp. 3d 111 (D.D.C. 2022); *United States v. McHugh*, 583 F. Supp. 3d 1 (D.D.C. 2022); *United States v. Nordean*, 579 F. Supp. 3d 28 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9 (D.D.C. 2021).

in violation of 18 U.S.C. § 231(a)(3).  *Id.*

On October 12, 2023, the defendants were arraigned on the indictment and pled not guilty. *See* October 12, 2023 Minute Order.  Trial in this matter is scheduled to begin on August 26, 2024. *See* April 8, 2024 Minute Order.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and … enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also, id.* ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished[.]").  Thus an indictment need only "echo[] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), and does not need to inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed," *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976); *see also United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("the validity of an indictment 'is not a question of whether it could have been more definite and certain'").

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties

have agreed to a "stipulated record."  *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added).  Neither action has occurred here.

"If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).  Criminal cases have no mechanism equivalent to the civil rule for summary judgment.  *United States v. Bailey*, 444 U.S. 394, 412, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *United States v. Gonzalez*, 2020 WL 6342948, at *5 (D.D.C. Oct. 29, 2020) (explaining that there is no summary judgment procedure in criminal cases or a procedure which permits pretrial determination of the sufficiency of the evidence).  Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove.  Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense.  *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016).  Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

When a court reviews a challenged indictment, the "court affords deference to the 'fundamental role of the grand jury'" and "cabins its analysis to 'the face of the indictment and, more specifically, the language used to charge the crimes.'"  *United States v. Mostofsky*, 579 F. Supp. 3d 9, 15 (D.D.C. 2021); *see also United States v. McHugh*, 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) ("In deciding a motion to dismiss an indictment, the question before the Court is a narrow one, and the court will neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged … dismissal is granted only in unusual circumstances").

## ARGUMENT

The defendants raise three arguments in support of their motion to dismiss Count One, all of which lack merit and have been repeatedly rejected by courts in this District and throughout the Country.  First, Section 231(a)(3) is neither unconstitutionally vague nor overbroad.  Second, Section 231(a)(3) does not exceed Congress's legislative powers because Congress has plenary power under U.S. Const. Article I, Section 8, Clause 17 to legislate regarding the District of Columbia, and the statute is a proper exercise of Congress's powers under the Commerce Clause as well.  Third, the Indictment, which tracks the statutory language in 18 U.S.C. § 231(a)(3), adequately alleges the statute's "federally protected function" element, and ample evidence will establish it at trial.

### I.    Section 231(a)(3) Is Neither Unconstitutionally Vague Nor Overbroad; Its Terms Are Clear On Their Face And Do Not Sweep Broadly

Section 231(a)(3) satisfies the Due Process Clause because it gave fair notice to the defendants that they engaged in prohibited conduct when they stormed the U.S. Capitol on January 6, 2021 during a violent riot.  The statute provides ample standards to judge whether conduct is unlawful, and it is thus not unconstitutionally vague.  Moreover, the defendants do not explain how charging them with violating Section 231(a)(3) undermines any First Amendment rights they intended to exercise that day or how a substantial number of the statute's applications are unconstitutional.  Lastly, the defendants' vagueness and overbreadth challenge has been raised by uniformly rejected by every court in this District to consider the claims.  *See, e.g.*, *United States v. Lamotta*, 22-cr-320 (JMC), Feb. 22, 2024 Minute Entry (rejecting a nearly word-for-word identical argument); *see also United States v. Lee*, 23-cr-368 (TNM), May 5, 2024 Minute Order; *United States v. Mock*, 2023 WL 3844604, at *5 (D.D.C. June 6, 2023); *United States v. Gossjankowski*, 2023 WL 130817, at *11-13 (D.D.C. Jan. 9, 2023*); *United States v. Samsel,* 21-cr-537 (JMC),

Order, ECF No. 240; *United States v. Grider*, 617 F. Supp. 3d 42, 51 (D.D.C. 2022); *United States v. Williams*, 2022 WL 2237301, *6 (D.D.C. June 22, 2022) (ABJ); *United States v. McHugh*, 583 F. Supp. 3d 1, 28-29 (D.D.C. 2022); *United States v. Nordean et al.*, 579 F. Supp. 3d 28, 56 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 22 (D.D.C. 2021).  The Court should reach the same conclusion in this case.

A.     The Vagueness and Overbreadth doctrines

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  When a statute prohibits activity, it must define the conduct "'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994).  To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306.  A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people,

all the time, everywhere.'"  *Bronstein*, 849 F.3d at 1107; *see also Johnson*, 576 U.S. at 603-604 (A law is not vague because it "call[s] for the application of a qualitative standard … to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree.'").  A statute is instead vague only where it fails to specify any "standard of conduct … at all."  *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).

There is a strong presumption that a statute is not vague.  *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963).  Other courts in this district have recognized that high bar.  *See, e.g.*, *United States v. Gonzalez*, 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) ("This is a stringent standard."); *see also United States v. Harmon*, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'"  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008); *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).[2]  The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also

---

[2] A party raising a facial challenge must establish "that no set of circumstances exists under which [the challenged statute] would be valid or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010).  The person challenging the statute need not show injury to himself.  *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984).  On the other hand, to prevail on an as-applied First Amendment challenge, the person challenging the statute must show that the regulations are unconstitutional as applied to their particular speech activity.  *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802-03 (1984); *accord, Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014).

Here, the defendants do not explain how charging them with violations of Section 231 is unconstitutional as applied to their conduct on January 6, and thus raise only a facial overbreadth challenge.

relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court …." *Id.* at 801. If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *United States v. Rundo*, 990 F.3d 709, 714 (9th Cir. 2021) ("we construe [the riot statute, 18 U.S.C. §§ 2101–2102] as constitutional if we can reasonably do so"). Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

A facial overbreadth challenge faces a steep climb when the statute focuses on conduct, as Section 231(a)(3) does. *See Virginia v. Hicks*, 539 U.S. 113, 119, 124 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct" and that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)"). The requirement that a defendant who violates Section 231(a)(3) act with the intent to obstruct, interfere or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of statute to protected speech). As the parties making the overbreadth challenge, the defendants bear the burden to show that the statute is substantially overbroad. *United States v. Fleury*, 20 F.4th 1353, 1362 (11th Cir. 2021).

B.    Section 231(a)(3) is not void for vagueness; its terms are clear

Section 231(a)(3) is not unconstitutionally vague, it provides sufficient notice of the conduct it prohibits.  The defendants first argue that several terms in the statute—"any act"; "obstruct, impede, or interfere"; "incident to and during the commission of a civil disorder"; and "in any way obstructs, delays, or adversely affects commerce"—do not provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited.  ECF No. 32 at 4-7.  But, in fact, the terms the defendants attack do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean*, 579 F. Supp. 3d at 57 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder."); *Samsel*, 21-cr-537 (JMC), ECF No. 240 at 8 (observing that "[t]he statute informs individuals of which law enforcement officers and civil disorders may not be obstructed, and it includes enough context to protect against arbitrary enforcement[]").  These are common words easily understood by an individual of average intelligence.  The defendants simply "misunderstand" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation – the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh*, 583 F. Supp. 3d at 27; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) ("perfect clarity and precise guidance have never been required" for a statute to pass muster).

Further, Section 231(a)(3) provides guidance on the types of conduct that count as a violation.  Indeed, the statute expressly defines what constitutes a "civil disorder" and who qualifies as a "fireman" or a "law enforcement officer."  18 U.S.C. §§ 232(1), 232(6), 232(7).  As

for the covered acts, the statute applies only to those acts that "obstruct, impede, or interfere" with the response to the civil disorder.  *Id.* at § 231(a)(3).  These verbs contemplate a tangible action that impacts the officer's performance of their duties to quell a disorder.  Section 231(a)(3) thus does not prohibit simple presence at a civil disorder but rather, "acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer" in the course of that disorder. *McHugh*, 583 F. Supp. 3d at 25.  It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston*, 461 F.2d 1119, 1122 (5th Cir. 1972).   A violation does not rest on the ipse dixit of an officer.  Section 231(a)(3) readily offers sufficient "minimal guidelines" to inform the public on the scope of the prohibition and to guide the enforcement of the statute. *Kolender v. Lawson,* 461 U.S. 352, 358 (1983).

The defendants cite to Supreme Court's decision in *Johnson*, 576 U.S. 591, which struck down the residual clause in the Armed Career Criminal Act (the "ACCA"), in support of their argument, but *Johnson* does not apply here.  ECF No. 32 at 5-6.  Section 231(a)(3) does not require police officers, prosecutors, juries, or courts to engage in a subjective and unbounded assessment of risk.  Instead, it provides standards to determine whether an individual defendant's actions have broken the law.  Nor have courts demonstrated an inability to apply Section 231(a)(3).

The defendants also contend that Section 231(a)(3) uses subjective terms in connection with both their actions and the connection to a civil disorder.  ECF No. 32 at 7-8.  Not so.  At its core, the statute provides concrete guidance on what conduct is unlawful.  The statute's text relies not on an officer's perceptions, but on the defendant's intended impacts.  In that sense, § 231(a)(3) bears a strong resemblance to other obstruction statutes.  For example, Congress has provided that a defendant cannot use bribery "to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute [.]"  18 U.S.C. § 1510(a).  Witness tampering statutes

prohibit the use of intimidation, threats, and so-called corrupt persuasion that a defendant intends to "influence, delay, or prevent the testimony of any person in an official proceeding" or that the defendant intends to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States[.]"  18 U.S.C. §§ 1512(b)(1), 1512(b)(3).  A defendant also faces criminal liability if they use threats or force and "willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with" court orders. 18 U.S.C. § 1509; *see also* 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); *United States v. Brice*, 926 F.2d 925, 930-31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).  Section 231(a)(3) fits neatly within this framework.

Section 231(a)(3)'s terms are quite different from statutory terms that courts have found to be vague and turning on subjective judgments of whether a defendant's conduct was "annoying," "indecent," or which depend on the victim's state of mind.  *See Nordean*, 2021 WL 6134595, at *16; *see also Williams*, 553 U.S. at 306. "An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh*, 583 F. Supp. 3d at 27.

The defendants' argument that Section 231(a)(3) is vague because it lacks an express scienter requirement or *mens rea* is also wrong.  ECF No. 32 at 8-9.  The defendants ignore the fact that Section 231(a)(3) requires intent, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on the scienter requirement in finding that the statute at issue was not overbroad); *McHugh*, 583 F. Supp. 3d 24-26 (finding that Section 231(a)(3) includes an intent requirement).

Section 231(a)(3) requires proof that the "act" was done "to obstruct, impede, or interfere" with a law enforcement officer, *i.e.*, the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere, which squarely addresses the defendants' overbreadth concerns. *See United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir. 1971) (construing Section 231(a)(3) to include an intent requirement); *McHugh*, 583 F. Supp. 3d at 25 ("[Section] 231(a)(3) is a specific intent statute[.]"); *Samsel,* 21-cr-537, ECF No. 240 at 6-7 ("[Section] 231(a)(3) requires defendants to have acted intentionally.").

The court in *United States v. Williams* reached the same result. 2022 WL 2237301. Judge Berman Jackson noted that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at *7. The court concluded that § 231(a)(3) "only criminalizes acts performed 'to obstruct, impede, or interfere with' a law enforcement officer," "in other words, the statute requires obstructive intent." *Id*.; *see also Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("It is true that section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers."); *Mechanic*, 454 F.2d at 854 (agreeing with *Foran* "that § 231(a)(3) must be construed to require intent"). And even if the statute lacked an express scienter requirement, courts, "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute."). The statute's scienter requirement disposes of the defendants' vagueness concerns.

The defendants' vagueness argument also fails because their conduct falls plainly within the ambit of § 231(a)(3).  The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others."  *Nordean*, 579 F. Supp. 3d at 57; *see generally United States v. Wood*, 2021 WL 3048448, at *9 (D. Del. July 20, 2021) ("Defendant does not have standing to bring a facial vagueness challenge" to Section 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct.").  The conduct at issue here squarely satisfies § 231(a)(3).  The January 6, 2021 attack on the United States Capitol by a mob of thousands, some of whom assaulted law enforcement officers, was clearly a "civil disorder," not just citizens peacefully demonstrating or filming a police officer.[3]  And there is no question that the defendants participated in the disorder.  The only real question for trial on Count One is whether the defendants' conduct "obstruct[ed], impede[d], or interfere[d] with" law enforcement officers who were engaged in their official duties in response to that civil disorder. 18 U.S.C. § 231(a)(3).  The government's ample evidence will show that: (1) both defendants ignored visible "Area Closed" signs and jumped over a retaining wall to enter the restricted area; (2) after Mauck appeared to have been pepper sprayed by police, he grabbed a bike rack barricade from the ground and shoved it toward an officer who was trying to hold rioters back from breaching the police line; (3) later, Willey grabbed a large, metal frame sign and pushed it toward the police line at the Lower West Plaza, after which he turned and fled back from the line as he appeared to be pepper sprayed by an officer; (4) Mauck and Willey eventually moved to the Lower West

---

[3] The violence that occurred in the course of the January 6, 2021 civil disorder is apparent. *See, e.g.*, *United States v. Fitzsimons*, No. 21-cr-158 (RC); *United States v. Robertson*, No. 21-cr-34 (CRC); *United States v. McCaughey, et al.*, No. 21-cr-40 (TNM); *United States v. Palmer*, No. 21-cr-328 (TSC); *United States v. Thompson*, No. 21-cr-461 (RCL); *United States v. Languerand*, No. 21-cr-353.

Terrace Tunnel, where some of the worst violence on January 6 occurred, and engaged in a heave-ho with other rioters, pushing against the police line formed in the Tunnel to block rioters from entering the Capitol Building; and (5) Mauck passed a large black speaker, which was ultimately thrown at police, and police riot shields to other rioters in the Tunnel.  ECF No. 1-1 at 2-21.  The government anticipates that law enforcement officers will testify that one of their objectives on January 6 was to keep rioters such as Mauck and Willey out of the restricted area, and the government's evidence will show that the defendants acted with the specific intent to hinder this and other law enforcement objectives.  To this end, the statute sufficiently "provide[s] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Count One provides fair notice to the defendants of the conduct it punishes and is therefore not unconstitutionally vague.  This is why every judge in this District to have considered these arguments has rejected them.  *See e.g.*, *Mock*, 2023 WL 3844604, at *5; *Gossjankowski*, 2023 WL 130817, at *11-13; *Nordean*, 579 F. Supp. 3d at 57-58; *United States v. Bingert et al.*, 605 F. Supp. 3d 111, 128-130 (D.D.C. 2022); *McHugh*, 583 F. Supp. 3d at 26-28; *Williams*, 2022 WL 2237301, at *4-5.[4]

    C.    <u>Section 231(a)(3) is narrowly tailored, focuses on conduct, and is not overbroad</u>

While not directly calling Section 231(a)(3) overbroad, the defendants contend that the statute criminalizes too wide an array of activity, including protected activity.  ECF No. 32 at 6-7.  This is wrong and has been flatly rejected by other courts.

---

[4] Several courts outside this circuit have also rejected similar challenges to Section 231(a)(3).  *See e.g.*, *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069-70 (D. Or. 2021); *United States v. Rupert*, 2021 WL 1341632, at *16-20 (D. Minn. Jan. 6, 2021); *Wood*, 2021 WL 3048448; and *Howard*, 2021 WL3856290.

The language of Section 231(a)(3) includes at least four features which limit its reach to criminal conduct and guard against its application to protected speech. First, the covered act must "obstruct, impede, or interfere" with a law enforcement response. 18 U.S.C. § 231(a)(3). The noun "act" combined with those verbs applies most naturally in this context of physical acts that affect the law enforcement response to a civil disorder. *See Williams*, 553 U.S. at 294 (considering the "string of operative verbs" as a limitation on the covered conduct). This text thus ensures that any conduct, however it may be characterized, is not protected speech.

Second, the obstructive act must affect an officer's performance of their duties "incident to and during the commission of" the civil disorder. 18 U.S.C. § 231(a)(3). In other words, the obstruction must affect duties relating to the response as the disorder occurs. It thus excludes obstructive acts lacking this connection.

Third, the act must inhibit the response to a civil disorder, which the statute defines as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." *Id.* at § 232(1). This definition includes various objective metrics that differentiate a civil disorder from other events, as it must involve at least three people, the people must engage in acts of violence, and the violence must pose "an immediate danger" of injury to persons or property or result in those injuries. *Id.* The second and third limitations, taken together, exclude acts that are connected to non-violent protest events. Instead, while the act need not be a part of the civil disorder, it must impair the efforts by law enforcement to quell the disorder. *See Williams*, 553 U.S. at 294-296 (analyzing various features of a statute that cut against overbreadth).

Fourth, Section 231(a)(3) requires intent. The defendant must *intend* to obstruct, impede, or interfere with the law enforcement activities. *See Foran*, 411 F.2d at 938; *Mechanic*, 454 F.2d

at 854; *Williams*, 2022 WL 2237301, at *6-7.  Requiring an intent to obstruct is yet another limit on what conduct could be captured by Section 231(a)(3).

Taken together, these textual limitations cabin the statute's application and guard against any possible overbreadth concerns.

The defendants cite to the Supreme Court's decision in *City of Houston v. Hill*, in support of their conclusory statement that Section 231(a)(3)'s imprecise language created "a criminal prohibition of alarming breadth."  482 U.S. 451 (1987); ECF No. 32 at 6.  In *Hill*, the Court concluded that an ordinance which made it illegal "to interrupt a police officer in the performance of his or her duties" was overbroad.  482 U.S. at 453, 467.  The Court explained that other portions of the ordinance that addressed conduct, such as assaults, had been preempted by state law, and the covered categories prohibited "verbal interruptions of police officers."  *Id.* at 460-461. Thus the ordinance was overbroad then because many types of verbal criticism are lawful.  *Id.* at 461-462.

Section 231(a)(3) presents a sharp contrast with the ordinance at issue in *Hill*.  In *Hill*, much of the obstructive conduct, namely assaulting and striking an officer, had been preempted by the state's penal law.  482 U.S. at 460.  In contrast, Section 231(a)(3) punishes physical acts that obstruct law enforcement.  Moreover, the operative verbs in Section 231(a)(3)—obstruct, impede, and interfere—bear little resemblance to the ordinance's reference to interruptions.  *Id.* at 461.  *Hill* therefore does not support a conclusion that § 231(a)(3) is substantially overbroad.[5]

And as with their vagueness challenge, courts in this District have repeatedly rejected the exact same overbreadth arguments raised by the defendants.  For example, rejecting an overbreadth

---

[5] The defendants take other case law out of context.  For example, before discussing *Hill*, the defendants cite to *United States v. Stevens*, 559 U.S. 460 (2010), in a manner implying that the case addressed Section 231(a)(3).  It did not.  The case addresses an animal cruelty ordinance.

challenge to Section 231(a)(3) in *United States v. Williams,* Judge Berman Jackson noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not." 2022 WL 2237301, at *6.[6] The court "agree[d] with the reasoning in those decisions." *Id.* "First, the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id.* (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." *Id.* "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id.* (citing *Hill*, 482 U.S. at 459); *see also United States v. Pugh*, 90 F.4th 1318, 1331 (11th Cir. 2024) ("It is obvious that" Section 231(a)(3) is not overbroad … "It is sufficient to say that [the appellant] cannot identify from the text of Section 231(a)(3) or from any actual prosecutions that 'a substantial number of instances exist in which [the provisions] cannot be applied constitutionally.'"); *Mostofsky*, 579 F. Supp. 3d at 22-24 (rejecting overbreadth challenge to Section 231(a)(3) and observing that Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech"); *Nordean*, 579 F. Supp. 3d at

---

[6] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; and *Nordean*, 2021 WL 6134595, at *17. Judge Berman Jackson also cited three out of district cases that reached the same result: *Howard*, 2021 WL 3856290, at *11-12; *Phomma*, 561 F. Supp. 3d 1059, 1067-68; and *Wood*, 2021 WL 3048448, at *7-8.

56-58 (Section 231(a)(3) is neither vague nor overbroad); *McHugh*, 583 F. Supp. 3d at 24-29 (same);.

For all of these reasons, the defendants' overbreadth arguments fail as well.

## II.   Congress Validly Exercised Its Constitutional Authority When It Enacted 18 U.S.C. § 231(a)(3)

The defendants' attack on the commerce predicate is misdirected and meritless for three reasons.  First, in addition to its limited power to regulate foreign and interstate commerce under Article I, Section 8, Clause 3 of the U.S. Constitution, Congress has plenary power under Article I, Section 8, Clause 17 to legislate regarding the District of Columbia. Congress expressly exercised its Clause 17 power when it enacted 18 U.S.C. § 231(a)(3), which prohibits, *inter alia*, obstructing police officers performing their official duties during a civil disorder which has "any effect whatsoever" on commerce "within the District of Columbia."  18 U.S.C. § 232(C); *see also Grider*, 617 F. Supp. 3d at 49 ("As such, section 231 authorizes the regulation of civil disorders that impact (1) interstate commerce or (2) commerce wholly within the District of Columbia."). The defendants do not address Congress's Clause 17 power, but only its power to regulate interstate commerce under Clause 3, a power that, unlike Clause 17, is bounded by the power of every state to regulate wholly intrastate commerce.  Congress's power to regulate not only commerce but matters within the government's police powers with respect to the District of Columbia is not constrained by the power of the states.  Thus, the defendants' Commerce Clause challenge to Count One, for conduct they committed wholly inside the District of Columbia, is beside the point and should be rejected. *See, e.g.*, *id.* at 49.

Second, even ignoring Congress's Clause 17 power, Section 231(a)(3) is a valid use of Congress's Clause 3 commerce power since the statute properly regulates an activity which substantially affects interstate commerce.  *Mostofsky*, 579 F. Supp. 3d at 19.  Section 231(a)(3)

easily satisfies the test laid out in *United States v. Lopez*, 514 U.S. 549 (1995), as multiple other courts have held.

A.   Congress properly exercised its Article I, Section 8, Clause 17 to prohibit Mauck and Willey's conduct inside the District of Columbia

The defendants argue that "Section 231(a)(3) exceeds Congress's Commerce Clause authority." ECF No. 32 at 1; *see also id*. at 9-14.  In support of this repeatedly rejected contention, they rely principally on *Lopez*, 514 U.S. 549, and *United States v. Morrison*, 529 U.S. 598 (2000), which held, respectively, that Congress exceeded its authority under the Commerce Clause by enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), and the Violence Against Woman Act of 1994, 42 U.S.C. § 13981(b).  *Lopez*, 514 U.S. at 568; *Morrison*, 529 U.S. at 617.

The defendants' argument fails in the first instance because, regardless of whether Section 231(a)(3) exceeds Congress's power under the Commerce Clause—and it does not, *see infra* at 22-28—for cases such as the defendants' where their criminal conduct took place wholly within the District of Columbia, the statute fits comfortably within Congress's Article I, Section 8, Clause 17 powers.

Clause 17 states:

> The Congress shall have Power … To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States….

U.S. Const. Art. I, § 8, Cl. 17.  Congress's power under Clause 17 "is plenary." *Palmore v. United States*, 411 U.S. 389, 397 (1973).  "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Id*.; *see also Neild v. District of Columbia*, 110 F.2d 246, 249 (D.C.

Cir. 1940) ("Congress may legislate within the District for every proper purpose of government," and "[w]ithin the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments.").  "[W]hen it legislates for the District, Congress … exercise[es] complete legislative control as contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other.  *Nield* 110 F.2d at 250-251; *see also Hyde v. S. Ry. Co.*, 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative power of Congress over the District of Columbia and the Territories [is] plenary, and [is] not depending upon the interstate-commerce clause[.]").

Section 231 prohibits "any act" that "obstruct[s], impede[s], or interfere[s] with any … law enforcement officer … engaged in [his]official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce."  18 U.S.C. § 231(a)(3).  "Commerce," as used in Section 231(a)(3), "means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*."  18 U.S.C. § 232(2) (emphasis added).  Thus, in enacting Section 231(a)(3), Congress relied on its Clause 17 power with respect to conduct in the District of Columbia.

Here, Count One of the Indictment charges that Mauck and Willey "obstructed and attempted to obstruct a law enforcement officer … incident to a civil disorder," e.g., January 6, that "adversely affected" "in any way or degree" "commerce," meaning, *inter alia*, commerce "wholly within the District of Columbia."  So regardless of whether Congress had authority under the Commerce Clause to regulate such criminal conduct in jurisdictions other than the District of

Columbia, it did not and could not exceed its "plenary authority" to exercise "police power" within the District of Columbia unless that exercise somehow violated another provision of the Constitution, which Section 231(a)(3) clearly does not, and the defendants do not argue so. *See Grider*, 617 F. Supp. 3d at 49–50 ("Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes.  The prohibition of riots is, of course, a central police power[.]" (internal citation omitted)); *see also, generally, Darnell v. Markwood*, 220 F.2d 374, 375–376 (D.C. Cir. 1954) (reversing dismissal of complaint under the Sherman Act, 15 U.S.C. §§ 1, 2, and 3, alleging that defendants "restrain[ed] interstate trade and commerce, and trade and commerce in the District" of Columbia; although defendants' activities wholly within the District of Columbia "do not come within the control of the Commerce Clause, or, therefore, within either Sections 1 or 2 of the Sherman Act … Section 3 … is not dependent upon the Commerce Clause but rests upon the plenary legislative power of Congress within the District of Columbia").

It is true that Congress's Commerce Clause power is cabined by the retained authority of the states to regulate commerce wholly within their borders, *Morrison*, 529 U.S. at 617-628; *Lopez*, 514 U.S. at 559, and that Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce," *Morrison*, 529 U.S. at 617; *see also*, ECF No. 13 at 13-14.  But while it lacks power to regulate purely intrastate commercial matters, Congress has plenary authority to regulate wholly local matters within the District of Columbia.  And "the power of Congress under Clause 17 permits it to legislate for the District in a manner with respect to subjects that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it under Art. I, § 8." *Palmore*, 411 U.S. at 397-398.  Thus because Clause 17, rather than Clause 3, provided Congress

with plenary authority to prohibit conduct that had any effect whatsoever on commerce within the District of Columbia, all the defendants' challenges to the commerce element of Section 231(a)(3) are beside the point, because they are grounded on limitations on Congress's power under Clause 3.

Moreover, even for criminal statues with national application that do not single out commerce within Washington, D.C. for special protection, as Section 232(2)(C) does with respect to Section 231(a)(3), Commerce Clause challenges to prosecutions for crimes occurring wholly within the District must also fail.  *See United States v. Mahdi*, 598 F.3d 883, 896 (D.C. Cir. 2010) (rejecting claim that VICAR, 18 U.S.C. § 1959, "is facially unconstitutional as it violates the Commerce Clause"; "[I]t is impossible to see how a statute regulating conduct within the District of Columbia could exceed congressional authority under the Commerce Clause"); *see also, id.* ("Even if there were some doubt about § 1959's constitutionality outside the District of Columbia, 'we need not find the language of [§ 1959] constitutional in all its possible applications in order to uphold its facial constitutionality.'"); *accord United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006) ("Within the District, Congress did not need to rely on its Commerce Clause authority.").  This is an additional reason why this Court should reject the defendants' challenge to the commerce predicate in Count One, where Congress expressly targeted domestic disorders that affected commerce within the District.

The defendants' Commerce Clause challenge lacks any merit since Congress prohibited their conduct pursuant to its powers over Washington, D.C. under Clause 17.  The Court can end its inquiry and reject Mauck and Willey's Commerce Clause argument based on this alone, as multiple other courts have done when evaluating identical motions from January 6 defendants. *See, e.g.*, *Grider,* 617 F. Supp. 3d at 50 ("The Constitution endows Congress with plenary power

over the District of Columbia … As such, the Court need not reach Defendant's Commerce-Clause argument in order to conclude that Congress has the constitutional authority to regulate civil disorders within the District of Columbia."); *cf. Mostofsky*, 579 F.Supp.3d at 20–21 (agreeing, in dicta, that Clause 17 empowered Congress to enact section 231 as to civil disorders within the District of Columbia).

B.    The defendants' Commerce Clause challenge is meritless in its own right

While the Court need not reach this issue and can deny the defendants' commerce clause challenge based on Congress's Clause 17 powers alone, as the court in *Grider* did, their commerce clause challenge also lacks any merit in its own right.  *See, e.g.*, *Mostofsky*, 579 F. Supp. 3d at 16.

In *Lopez*, the Supreme Court found that there are "three broad categories of activity that Congress may regulate" under its interstate commerce power:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

514 U.S. at 558–59 (citations omitted).  The relevant inquiry here is whether Section 231(a)(3) "substantially affects" interstate commerce.  *Mostofsky*, 579 F. Supp. 3d at 16.  When faced with this inquiry, courts rely on the "four *Lopez* factors" to determine whether an activity has a "substantial effect" on interstate commerce:

> (1) whether the activity itself 'has anything to do with commerce or any sort of economic enterprise, however broadly one might define those terms'; (2) 'whether the statute in question contains an express jurisdictional element'; (3) 'whether there are express congressional findings or legislative history regarding the effects upon interstate commerce of the regulated activity'; and (4) 'whether the relationship between the regulated activity and interstate commerce is too attenuated to be regarded as substantial.'

*United States v. Reed*, 2017 WL 3208458, at *8 (D.D.C. July 27, 2017).

Beginning the *Lopez* factor inquiry, as Chief Judge Boasberg did in *Mostofsky*, with the second *Lopez* factor, this factor examines whether the statute in question has "a 'minimal nexus' to interstate commerce."  579 F. Supp. 3d at 17; *see also Scarborough v. United States*, 431 U.S. 563, 568 (1977) (same, upholding felon-in-possession statute).  Here, Section 231(a)(3) contains an express jurisdictional element "because it requires that the 'civil disorder' during which the act 'to obstruct, impede, or interfere with' a law-enforcement officer performing his duties occurs must be one that 'in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce.'"  *Mostofsky*, 579 F. Supp. 3d at 17; *see also id.* ("So does § 231(a)(3) contain such a jurisdictional element? The answer is yes…."); *Wood*, 2021 WL 3048448, at *4-6 (rejecting defense claim, based on *Morrison* and *Lopez*, that "§ 231(a)(3) unconstitutionally exceeds Congress's authority and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce"; "courts have held that 'despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element'").  Satisfying the second *Lopez* factor "is typically enough to satisfy the Commerce Clause," and since Section 231(a)(3) does so, the statute is a valid exercise of Congress's Commerce Clause power.  *Mostofsky*, 579 F. Supp. 3d at 16.

Contrast Section 231(a)(3), which has an express jurisdictional element, to the challenged statutes in both *Lopez* and *Morrison*, which contained no jurisdictional element requiring the Government to prove that the offense conduct affected interstate commerce.  *See Lopez*, 514 U.S. at 561-562 (Gun Free Schools Zone Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce,"

in contrast to former 18 U.S.C. § 1202(a), "which made it a crime for a felon to 'receiv[e], posses[s], or transpor[t] in commerce or affecting commerce ... any firearm"); *Morrison*, 529 U.S. at 613 (the Violence Against Women Act, "[l]ike the Gun–Free School Zones Act at issue in *Lopez*, … contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"; "Congress elected to cast § 13981's remedy over a wider, and more purely intrastate, body of violent crime"). *Lopez* and *Morrison* are thus no help to the defendant.

While the defendants concede that Section 231(a)(3) has a commercial nexus, they still raise a short attack on the second factor which ignores holdings by other courts in this District and misunderstands what the second factor looks for. ECF No. 32 at 11. Specifically, defendants make the unsupported statements that (1) a defendant can be guilty if their act does not impact commerce and (2) the statute does not require a "substantial" impact on Congress. *Id.* at 12. As to the first of these arguments, *Mostofsky* rejected it, holding that "'[w]hen a person deliberately commits some act to obstruct, impede or interfere with those officers [who are 'attempting to quell an interference with interstate commerce'], that person is impacting interstate commerce.'" 579 F. Supp. 3d at 18; *see also United States v. Phomma*, 561 F. Supp. 3d 1059, 1065-1067 (D. Or. 2021) (rejecting indirect-connection challenge).

The court in *Mostofsky* also rejected the second challenge, that Section 231(a)(3) does not require a "substantial effect on commerce." ECF No. 32 at 12. As Chief Judge Boasberg held, the defendants' "misunderstand[] what is required in a jurisdictional element. The 'substantiality' requirement does not apply in the context of determining what quantum of evidence is required to satisfy statutory interstate commerce jurisdictional elements,' and a statute may be upheld when it contains an element that requires that 'the conduct criminalized must affect or attempt to affect

commerce in some way or degree.'" *Mostofsky*, 579 F. Supp. 3d at 19 (internal citations omitted). The court also stated that "the incident to and during' language in § 231(a)(3) does not suggest that the 'act' or 'lawful performance of [an officer's] official duties' is somehow minimally related to the civil disorder" and is thus not too attenuated. *Id.*

Thus the defendants' challenges to the second *Lopez* factor fail, and as noted, the Court can end its inquiry based on the second *Lopez* factor being satisfied. *See Mostofsky*, 579 F. Supp. 3d at 16; *Phomma*, 561 F. Supp. 3d at 1065 (notwithstanding *Lopez* and *Morrison*, "§ 231(a)(3) is within Congress's Commerce Clause authority because the statute includes an express jurisdictional element, requiring that the defendant's obstruction or interference with a law enforcement officer or firefighter must occur 'during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce.'"); *accord, United States v. Howard*, 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021); *Wood*, 2021 WL 3048448, at *4– 6; *United States v. Pugh*, 20-cr-00073, ECF No. 95 at 7-11 (S.D. Ala., May 13, 2021); *see also Terry v. Reno*, 101 F.3d 1412, 1418 (D.C. Cir. 1996) ("*Lopez's* fundamental proposition is that Congress must ensure that its Commerce Clause power to regulate non-commercial activities extends to only those activities that substantially affect interstate commerce. *Congress may do so either through its own legislative findings or by including a jurisdictional element in the statute; it need not do both*." (emphasis added)).

While unnecessary, turning to the other *Lopez* factors out of an abundance of caution, as to the first—that the regulated activity is commercial/economic in nature—the defendants argue that "the act of interfering with the duties of a law enforcement officer incident to a civil disorder is not economic in nature[.]" ECF No. 32 at 11. Again, the defendants misunderstand the Commerce Clause inquiry; "*Morrison* did not bar regulation of noneconomic conduct that affects interstate

commerce in individual instances … [t]he jurisdictional element in § 231(a)(3) requires precisely a showing that the regulated conduct 'interferes with or otherwise affects commerce' — namely, that the individual civil disorder at issue 'obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce.'"  *Mostofsky*, 579 F. Supp. 3d at *19; *see also United States v. Hill*, 927 F.3d 188, 199 (4th Cir. 2019) ("Congress may proscribe violent conduct when such conduct interferes with or otherwise affects commerce over which Congress has jurisdiction.").  The first *Lopez* factor is thus satisfied by Section 231(a)(3).

As to the third *Lopez* factor, the defendants' argument appears to be that because the language of Section 231 does not expressly state how interference with law enforcement affects interstate commerce, the statute fails this factor.  ECF No. 32 at 13.  To start, formal congressional findings are neither required nor sufficient to establish a valid exercise of federal commerce authority, so the lack of express findings for Section 231(a)(3) has no impact on the analysis.  *Lopez*, 514 U.S. at 562-563.  Moreover, the defendants' reliance on Senator Long being the supposed power behind the act, making his commentary supporting legislative history has been rejected by other courts since Senator Long did not vote for the bill which enacted the statute into law.  *See Wood*, 2021 WL 3048448, at *8.

Lastly, as to the fourth *Lopez* factor, the defendants argue that the relationship between a defendant's conduct and interstate commerce is too attenuated.  ECF No. 32 at 13-14.  Not so.  Congress defined a civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  18 U.S.C. § 232(1).  Put another way, the disorder must be sufficiently severe that it involves at least three individuals engaged in acts of violence.  *Id.*  Violence is not trivial.  On top of that, the statute requires the disorder to affect

interstate commerce.  18 U.S.C. § 231(a)(3).  There is thus a direct relationship between the regulated activity and commerce.  Again, the defendants' argument was rejected in *Mostofsky*, where the court held that "'the incident to and during' language in § 231(a)(3) does not suggest that the 'act' or 'lawful performance of [an officer's] official duties' is somehow minimally related to the civil disorder. Rather, the most natural reading of the phrase is to indicate that those activities 'arise[ ] out of' or occur during the civil disorder, not that they are some tangential consequence far downstream from the disorder itself."  579 F. Supp. 3d at 19; *see also Howard*, 2021 WL 3856290, at *10 (the relationship between the activity regulated under Section 231(a)(3) and commerce is not attenuated because "[w]hen a person deliberately commits some act to obstruct, impede or interfere with those officers, that person is impacting interstate commerce.").

In sum, the defendants' Commerce Clause argument lacks merit because Section 231(a)(3) satisfies the *Lopez* factors, meaning that it substantially affects commerce.  The Court should join with others that have roundly rejected identical arguments, not just in this District, but across the country.  *See, e.g.*, *Pugh*, 90 F.4th at 1328.

***

The defendants' arguments that Section 231(a)(3) exceeds Congress's Commerce Clause authority all fail because: (1) in addition to its limited power to regulate foreign and interstate commerce under Article I, Section 8, Clause 3 of the U.S. Constitution, Congress has plenary power under Article I, Section 8, Clause 17 to legislate regarding the District of Columbia; and (2) Section 231(a)(3) satisfies the *Lopez* factors which demonstrates that the statute did not exceed Congress's Clause 3 power.

### III.    The Indictment Adequately Alleges That The Defendants Interfered With A Federally Protected Function

The defendants' final argument is that Count One fails to identify "what federally protected function was adversely affected by the Civil Disorder," so therefore the count must be dismissed. ECF No. 32 at 14-16.  The defendants misunderstand the motion to dismiss standard and what an indictment must allege.  As noted prior, "to be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *Verrusio*, 762 F.3d at 13; *see also* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government.").  This standard can be satisfied by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *Williamson*, 903 F.3d at 130.  Further, Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the prosecution "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," neither of which has happened here. *Yakou*, 428 F.3d at 246-47.

A "federally protected function" is defined as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof."  18 U.S.C. § 232(3).  Here, the Indictment tracks the language of the statute itself and states, "during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function."  ECF No. 13; *see Williamson*, 903 F.3d at 130 (denying a motion to dismiss when "the indictment echoes the operative statutory text while also specifying the time and place

of the offense."); *see also United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010) (an

indictment "that 'tracks' the words of a statute to state the elements of the crime is generally

acceptable, and while there must be enough factual particulars so the defendant is aware of the

specific conduct at issue, the presence or absence of any particular fact is not dispositive"); *United

States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) ("We have consistently upheld indictments that do

little more than to track the language of the statute charged and state the time and place (in

approximate terms) of the alleged crime.").

Evidence at trial could establish the federally protected function through the United States

Secret Service's protection of the Vice President and his family, *see United States v. Nordean*, 579

F. Supp. 3d 28, 55-56 (D.D.C. 2021), or the United States Capitol Police's obligation to protect

the United States Capitol, *see* 2 U.S.C. § 1961.  But the government is not required to plead these

evidentiary details in an indictment.  An indictment is sufficient if it contains the elements of the

charged offense and enough detail to allow a defendant to prepare a defense and invoke the Double

Jeopardy Clause if necessary.  *Hamling*, 418 U.S. at 117-119.[7]

---

[7] The defendants complain that, under the government's view, the government "*need not*" prove
that a defendant "hindered a Secret Service officer" to be found guilty on the 231 charge, because
"a defendant only needs to have interfered with any law enforcement officer" and the U.S. Capitol
Police "were there for a different purpose."  ECF No. 32 at 16.  The defendants' point here is not
clear, but under any construction, it is not a ground for dismissal of the indictment. To the extent
this argument is premised on the notion that the statute requires proof that the defendant's own
"act[s]" must *themselves* "obstruct[], delay[], or adversely affect[]" commerce or a federally
protected function, that premise is refuted by the plain meaning of the statute.  Section 231(a)(3)
requires that the "civil disorder" as a whole—not the defendant's own acts—"obstruct[], delay[],
or adversely affect[]" commerce or a federally protected function.  18 U.S.C. § 231(a)(3).  To the
extent the defendants rely on the idea that Congress' certification of the 2020 presidential election
is not a federally protected function, it is inapposite.  It remains that at trial, the government may
prove that the Civil Disorder hindered the Secret Service's protective function over the Vice
President and his family.  *See Nordean*, 579 F. Supp. 3d at 54-56.  At this stage of the proceedings,
that alone is enough to overcome the defendants' arguments.  *See, e.g., id.* at 61 (finding a
substantially similar indictment "meet[s] the standards [], which the Court notes do not require the
Government to disclose all its evidence or *how* it will prove its case").

Multiple January 6 defendants have made the same argument as the defendants regarding the sufficiency of the indictment as to federally protected function.  These arguments have been roundly rejected.  For example, in *United States v. Joseph*, facing a nearly identical motion, Judge Contreras held that: (1) "'by using the statutory language and specifying the time and place of the offense,' the indictment gives Defendant 'fair notice of the charge against which he … need[s] to defend;'" (2) "[t]here has been extensive discovery in this case, but in the event there is any lingering confusion about the particular facts underlying the charged offense, the remedy would be a request for a bill of particulars, not dismissal"; and (3) "Count One"—the Section 231 Count in that indictment—"sufficiently puts Defendant on notice of the charge against which he must defend, and that dismissal of the Count is not warranted on this ground."  23-cr-0035 (RC), April 25, 2024 Order, ECF No. 163 at 4; *see also United States v. Lamotta*, Feb 22, 2024 Minute Entry (rejecting the exact verbatim argument raised by defendants); *United States v. Warnagiris*, 2023 WL 6926491, at *4 (D.D.C. Oct. 19, 2023) ("[i]t is generally sufficient … for an indictment to 'set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"); *United States v. Sargent*, 2022 WL 1124817, at *3 (D.D.C. Apr. 14, 2022) (explaining that "no factual allegations are required when the statutory language itself allows the defendant to prepare a defense to the charge").

Moreover, even if the Court determines that the Indictment is legally insufficient to state an offense, it should not dismiss the charges until the United States "has made a full proffer of evidence" or the parties have agreed to a "stipulated record." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000); *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995).[8]

---

[8] Further, Section 231(a)(3) is ""a so-called 'divisible statute' … [that] sets out one or more

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the defendants' motion to dismiss Count One be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     /s/ Matthew E. Vigeant
MATTHEW E. VIGEANT
Assistant United States Attorney
D.C. Bar No. 144722
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-2423
matthew.vigeant@usdoj.gov

JULIE BESSLER
Assistant United States Attorney
PA Bar No. 328887
601 D Street N.W.
Washington, D.C. 20530
(202) 809-1747
Julie.Bessler@usdoj.gov

CRAIG ESTES
Assistant U.S. Attorney
Mass. Board of Bar Overseers #670370
Capitol Siege Section Detailee
U.S. Attorney's Office
District of Massachusetts
(617) 748-3100
Craig.Estes@usdoj.gov

---

elements of the offense in the alternative." *Descamps v. United States*, 570 U.S. 254, 257 (2013). Because Section 231 contains two jurisdictional hooks—that the civil disorder affects commerce *or* a federally protected function—if the Court finds that one of the two hooks is not sufficient to survive the instant motion, then the Section 231 charge may be maintained as to the surviving hook.

<u>CERTIFICATE OF SERVICE</u>

On this tenth day of July, 2024, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System (ECF).

By:    <u>*/s/ Matthew E. Vigeant*</u>
        Matthew E. Vigeant
        Assistant United States Attorney