**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 1:23-CR-339 (ACR)** |
| | : | |
| **ETHAN MAUCK AND** | : | |
| **PETER WILLEY,** | : | |
| | : | |
| **Defendants.** | : | |

**PARTIES' PRETRIAL BRIEF**

The parties submit the following pretrial brief, noting areas of agreement and disagreement, and where further trial preparation may require modifications.

## I.     Plea agreements

1. The government extended plea offers to defendants Mauck and Willey on January 12, 2024, which lapsed on January 24, 2024.  The defendants ultimately rejected the plea offers, which are attached for reference.  Both defendants were offered agreements to plead guilty to one count of 18 U.S.C. § 231 (civil disorder).  The government did not discuss with defense counsel any potential sentencing exposure.

2. By Counsel for Ethan Mauck:

   a. Defense counsel received the government's plea offer via email on January 12, 2024.  Defense counsel communicated the plea offer via email and telephone to Mr. Mauck on or about January 12, 2024.

   b. On January 12, 2024, defense counsel notified the government that she would not positively endorse the plea offer to Mr. Mauck and stated that Mr. Mauck would be amenable to a misdemeanor plea offer.  Government did not respond.

1

    c.  On or about April 2, 2024, defense counsel told the government on the phone that Mr. Mauck rejected the plea offer and requested a potential misdemeanor plea offer, which government counsel rejected.

    d.  On April 5, 2024, Mr. Mauck, through counsel, notified the Court that he rejected the plea agreement and intended to go to trial.

3.  By Counsel for Peter Willey:

    a.  On November 15, 2023, defense counsel contacted the government via email to begin plea negotiations and proposed a plea to Count Four of the Indictment. Counsel for the government did not respond to that offer until they sent a plea offer to Count One of the Indictment in January 2024.

    b.  Defense counsel received the government's plea offer via email on January 12, 2024.  Defense counsel communicated the plea offer via telephone to Mr. Willey on or about January 19, 2024.

    c.  On April 1, 2024, the parties conferred via telephone regarding the pending plea offer.  Defense counsel asked the government to consider a misdemeanor plea offer, which government counsel rejected.  Defense counsel told government counsel on that telephone call that Mr. Willey rejected the plea offer to Count One.

    d.  On April 5, 2024, Mr. Willey, through counsel, notified the Court that he rejected the plea agreement and intended to go to trial.

## II.    Joint statement of the case

N/A

## III.    Proposed voir dire questions

N/A

**IV.**   **Proposed Bench Instructions (Elements of Crimes Alleged)**

    **a.**   **Count One: 18 U.S.C. § 231(a)(3)[1]**

Count One charges the defendants with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.  Count One also charges the defendants with attempt to commit the crime of obstructing officers during a civil disorder.

      **i.**   **Elements**

In order to find the defendants guilty of this offense, the government must prove each of the following elements beyond a reasonable doubt:

1. First, the defendants knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

2. Second, at the time of the defendants' actual or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

3. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

---

[1] *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 21-22), *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101 at 15-16), *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 17), and *United States v. DaSilva*, 21-cr-564 (CJN) (ECF No. 76 at 2-3); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 22); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 26); *see also United States v. Grider*, 651 F. Supp. 3d 1, 13 (D.D.C. 2022) ("[T]he Court need not find that the defendant's actions *in fact* obstructed law officer officers. Rather, the Court need only find that the defendant committed or attempted to commit an act with the *specific intent* to obstruct law enforcement officers.").

### ii. Definitions

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia.  It also means commerce wholly within the District of Columbia.[2]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[3]

The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) or the legislative branch.  The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.  The term "instrumentality" includes any other formal entity through which the government operates, such as the United Sates Capitol Police.[4]

---

[2] Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021) ECF No. 151, Trial Tr. at 7-10; *see also United States v. Thomas*, 21-cr-552 (DLF) ECF No. 150 at 21; *United States v. Schwartz, et al.*, 21-cr-178 (APM) ECF No. 172 at 18.

[3] *See* 18 U.S.C. § 232(3).

[4] *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted).  Dictionary definitions of the word 'instrumentality' generally are broad.

For the U.S. Capitol Police and Metropolitan Police Department on January 6, 2021, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[5]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.  In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant

---

Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999).  Webster's Third New International Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out.' Webster's Third New International Dictionary 1172 (1971).").  For January 6 cases using this instruction, *see United States v. McAbee*, 21-cr-35 (RC) ECF No. 376 at 29-30; *United States v. Christensen*, 21-cr-455 (RCL) ECF No. 72 at 9; *United States v. Alam*, 21-cr-190 (DLF) ECF No. 104 at 26; *United States v. Gietzen*, 22-cr-116 (CJN) ECF No. 50 at 23.

[5] *United States v. McAbee*, 21-cr-35 (RC) ECF No. 376 at 30; *United States v. Christensen*, 21-cr-455 (RCL) ECF No. 72 at 9; *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 19).  *See also, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct.  We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.'  We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

did, said, or perceived.[6, 7]

In Count One, the defendants are also charged with attempt to commit the crime of obstructing officers during a civil disorder.  An attempt to commit Civil Disorder is a crime even if the defendants did not actually complete the crime.

In order to find the defendants guilty of attempt to commit Civil Disorder under Section 231(a)(3), the Court must find that the government proved beyond a reasonable doubt each of the following elements:

1. First, that the defendants intended to commit the crime of Civil Disorder, as defined above.

2. Second, that the defendants took a substantial step toward committing Civil Disorder, which strongly corroborates or confirms that the defendant intended to commit that

---

[6] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Christensen*, 21-cr-455 (RCL) ECF No. 72 at 9; *United States v. Gunby*, 21-cr-626 (PLF) ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)); *United States v. Kelly*, 21-cr-708 (RCL) ECF No. 101 at 9; *United States v. Carpenter*, 21-cr-305 (JEB) ECF No. 97 at 11 (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived").

[7] The defendant objects to the language in red. The addition of "perceived" has been rejected in other cases. *See, e.g.*, *United States v. Vo*, 21-cr-509 (TSC); *see also United States v. Celentano*, 22cr186 (TJK) (ECF No. 64 at 16).  The government responds that the defendant in Vo was not charged with violating 18 U.S.C. § 231, so the Section 231 jury instructions were never discussed by Judge Chutkan in that case.  Additionally, the cited instruction from Judge Kelly in *Celentano* merely said that "you may not find the defendant guilty of attempt to interfere with officers during a civil disorder merely because he thought about it."  *Id.* at 16.  The Court did not reject that knowledge includes what the defendant perceives.

crime.[8]

With respect to the first element of attempt, the Court may not find the defendants guilty of attempt to commit Civil Disorder[9] merely because the defendants thought about it.  The Court must find that the evidence proved beyond a reasonable doubt that the defendants' mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, the Court may not find the defendants guilty of attempt to commit Civil Disorder[10] merely because the defendants made some plans to or took some preparation for committing that crime.  Instead, the Court must find that the defendants took some firm, clear, undeniable action to accomplish his intent to commit Civil Disorder.[11]  However, the substantial step element does not require the government to prove that the defendants did everything except the last act necessary to complete the crime.

The defendants may be found guilty of the offense charged in Count One if the defendants

---

[8] The defendant objects to the government's proposed language in red, because this is unnecessary and confusing. It conflates the "substantial step" element with the "intent" element. To include this language makes the first element superfluous. Other cases support the more limited language. *See, e.g.*, *United States v. Celentano*, No. 22-cr-186 (TJK) (ECF No. 64 at 16).  The government responds that this does not conflate the elements nor is it superfluous.  Multiple courts have used this definition of what constitutes a substantial step.  *See, e.g.*, *United States v. Kelly*, 21-cr-708 (RCL) ECF No. 101 at 9 ("The defendant engaged in conduct that constituted a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms that the defendant intended to commit that crime.").  Further, "to the extent that the statutory elements do overlap to some degree, we note that the canon against surplusage is only a presumption, one that can be overcome by other interpretive considerations."  *United States v. Alford*, 89 F.4th 943, 951 (D.C. Cir. 2024).

[9] The defendants have indicated to the government that they object to the use of the term "Civil Disorder" and instead would use the phrase "obstruct officers during a civil disorder."

[10] The defendants have indicated to the government that they object to the use of the term "Civil Disorder" and instead would use the phrase "obstruct officers during a civil disorder."

[11] The defendants have indicated to the government that they object to the use of the term "Civil Disorder" and instead would use the phrase "obstruct officers during a civil disorder."

obstructed law enforcement officers during a civil disorder or attempted to obstruct law enforcement officers during a civil disorder.  If the Court finds beyond a reasonable doubt that the defendants committed the offense of Civil Disorder[12] in either one of these ways, the Court should find the defendants guilty of Count One, and the Court need not consider whether the defendants committed the offense of Civil Disorder[13] in the other way.

---

[12] The defendants have indicated to the government that they object to the use of the term "Civil Disorder" and instead would use the phrase "obstruct officers during a civil disorder."

[13] The defendants have indicated to the government that they object to the use of the term "Civil Disorder" and instead would use the phrase "obstructing officers during a civil disorder."

b. **Count Two: 18 U.S.C. § 1752(a)(1) [Government's Proposed Instruction]**[14]

Count Two of the Indictment charges the defendants with entering or remaining in a restricted building or grounds, which is a violation of federal law.

### i. Elements

In order to find the defendants guilty of this offense, the government must prove each of the following elements beyond a reasonable doubt:

1. First, the defendants entered or remained in a restricted building or grounds without lawful authority to do so.

2. Second, the defendants did so knowingly.[15]

---

[14] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021).  For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 26); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 8-9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 30).

[15] Section 1752 requires proof that the defendant knew that an area was posted, cordoned off, or otherwise restricted, and knew that he or she lacked lawful authority to be in that area, but it does not require proof that the defendant knew of the presence of a U.S. Secret Service protectee within the restricted area.  *United States v. Carnell et al.*, 23-cr-139 (BAH) ECF No. 98 at 10-12.  Several other courts in this district have similarly held that knowledge of a protectee's presence in the restricted area is not required.  *See, e.g.*, *United States v. Smith*, No. 23-cr-71 (RDM), Trial Tr. at 82-97 (May 10, 2024); *United States v. Ibrahim*, 21-cr-496 (TJK) Apr. 16, 2024 Minute Entry; *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024); *United States v. Warnagiris*, 21-cr-382 (PLF), ECF No. 128 at 4–5 (D.D.C. Mar. 28, 2024); *United States v. Chambers*, 23-cr-300 (DLF) Mar. 14, 2024 Minute Entry; *United States v. Kenyon*, ECF No. 23-cr-101 (ABJ), Minute Entry Mar. 12, 2024;*United States v. Nester*, 22-cr-183 (TSC) (D.D.C. Mar. 5, 2024), Trial Tr. at 1199–1200; *United States v. Rhine*, No. 21-cr-687 (RC), Apr. 24, 2024 Mem. Court's Responses to Jury Questions, ECF No. 104 at 4); *United States v. Griffin*, 21-cr-92 (TNM), Trial Tr. at 330–32, ECF No. 106.  Some courts in this district have come to the opposite conclusion.  *See United States v. Samsel*, 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) Verdict Tr. at 4; *United States v. Groseclose*, 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024); *United States, v. Elizalde*, 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023); *United States v. Hostetter*, 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023).  The D.C. Circuit is expected to decide this issue in *United States v. Griffin*, 22-3042 (oral argument held Dec. 4, 2023).

### ii. Definitions

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One.

**c.  Count Two: 18 U.S.C. § 1752(a)(1) [Defendants' Proposed Instruction]**

In order to find the defendants guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, defendants entered or remained in an area meeting the definition of a "restricted building or grounds" without lawful authority to do so.

Second, defendants did so knowingly, meaning the government must prove

[a] they knew that they had entered or remained

[b] in what they knew to be a "restricted building or grounds" and

[c] that they knew they did not have lawful authority to enter that area.[16]

A "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President.[17]

The term "otherwise restricted" means visually or verbally demarcated in a way that gives clear on-site notice, comparable to that given by a posting or cordoning off, that the area is, at the time of the entering or remaining, accessible only to certain authorized people.[18]

---

[16] *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842 (D.D.C. July 13, 2023); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec. 1, 2023); *United States v. Grossclose*, No. 21-cr-311 (CRC), ECF No. 99 (D.D.C. Jan. 5, 2024); *United States v. Samsel*, 21-cr-537 (JMC); *United States v. Lamotta*, 22-cr-320 (JMC); *United States v. Hicks*, 23-cr-399 (JMC).

[17] The government responds that protectees also include the Vice President's immediate family. *See, e.g.*, *United States v. Lamotta*, 22-cr-320 (JMC), ECF No. 59 at 12.

[18] The government responds that notice that an area is "otherwise restricted" may include other indicia such as a police presence or other verbal or visual cues demonstrating to an individual that their presence is not permitted.

To prove that defendants knew that the area they were entering or remaining in was, at that time, a "restricted building or grounds," it is insufficient for the government to prove that defendants merely knew that that area was restricted in the everyday sense. The government must instead prove that, at the time defendants entered or remained, they (A) knew that area was then posted, cordoned off, or otherwise restricted; and (B) knew that the Vice President was then or would be present within that area.[19]

---

[19] The government responds that as noted in Footnote 15, the requirement that a defendant know that the Vice President was or would be present in the restricted area has been rejected by multiple courts in this District.

### d. Count Three: 18 U.S.C. § 1752(a)(2)[20]

Count Three of the Information charges the defendants with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of federal law.

#### i. Elements

In order to find the defendants guilty of this offense, the government must prove each of the following elements beyond a reasonable doubt:

1.  First, the defendants engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2.  Second, the defendants did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3.  Third, the defendants' conduct occurred when, or so that, their conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

#### ii. Definitions

"Disorderly conduct" is conduct that, when viewed in the circumstances in which it takes place, is likely to endanger public safety or create a public disturbance.[21] Even passive, quiet, and

---

[20] 18 U.S.C. § 1752. For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6-7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 27); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32); *United States v. Horn*, 21-cr-301 (TJK) (ECF No. 82 at 13).

[21] *United States v. Alford*, 89 F.4th 943, 950 (D.C. Cir. 2024); *see also United States v. Woehl*, 24-cr-83 (DLF) ECF No. 44 at 3; *United States v. Martin*, 21-cr-562 (RC) ECF No. 87 at 39; *United States v. Grider*, 21-cr-22 (CKK) ECF No. 150 at 24 ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

nonviolent conduct can be "disorderly," if the conduct is likely to cause a public disturbance.[22] Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person is likely to be harmed.

"Disruptive conduct" is conduct that, when viewed in the circumstances in which it takes place, tends to interfere with or inhibit usual proceedings.[23]   This includes conduct that causes disorder or turmoil, or that stops or prevents the normal continuance of an activity.   Whether particular conduct is "disruptive" depends on the context and surrounding circumstances and includes conduct that is plainly out of place for the time or setting where it occurs.[24, 25]

[Proposed by Defendants: "Disorderly conduct" is conduct that tends to disturb the public

---

[22] *United States v. Alford*, 89 F.4th 943, 950 (D.C. Cir. 2024) ("[I]t is … clear from caselaw that even passive, quiet and nonviolent conduct can be disorderly.  The Supreme Court has recognized that a breach of the peace can occur 'by passive conduct likely to cause a public disturbance[.]'" (citing *Garner v. Louisiana*, 368 U.S. 157, 174 (1961))); *see also United States v. Woehl*, 24-cr-83 (DLF) ECF No. 44 at 3; *United States v. Martin*, 21-cr-562 (RC) ECF No. 87 at 39.

[23] *United States v. Alford*, 89 F.4th 943, 951 (D.C. Cir. 2024); *see also United States v. Woehl*, 24-cr-83 (DLF) ECF No. 44 at 4; *United States v. Martin*, 21-cr-562 (RC) ECF No. 87 at 40.

[24] *United States v. Alford*, 89 F.4th 943, 950-51 (D.C. Cir. 2024) (noting that "disrupt" means "to throw into disorder or turmoil" and that "disruptive actions are those that are inappropriate or plainly out of place for the time or setting"); *see also United States v. Woehl*, 24-cr-83 (DLF) ECF No. 44 at 4; *United States v. Martin*, 21-cr-562 (RC) ECF No. 87 at 40.

[25] Defendants object to this language and would ask the Court to use the instructions from *United States v. Lamotta*, 22-cr-320 (JMC) and *United States v. Hicks*, 23-cr-399 (JMC) as included above, which are consistent with prior instructions sought by the government. The Circuit in *Alford* was not addressing the appropriate jury instructions for disorderly conduct, and the facts were categorically different – Mr. Alford entered the Capitol chambers, he was not just on the Capitol grounds.   The government responds that *Alford* relied on the standard tools of statutory construction to craft definitions of "disorderly conduct" and "disruptive conduct," then compared the definitions to the appellant's more restrictive proffered definitions, before rejecting the appellant's proposal.  89 F.4th at 949-952.  Thus the appellant's conduct played no role in the D.C. Circuit's straightforward construction of the terms "disorderly conduct" and "disruptive conduct." The D.C. Circuit's construction of these terms is controlling.

peace or undermine public safety.[26]   Disorderly conduct includes when a person acts in such a

manner as to cause another person to be in reasonable fear that a person or property in a person's

immediate possession is likely to be harmed or taken, uses words likely to produce violence on the

part of others, or is unreasonably loud and disruptive under the circumstances.[27]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal

course of a process.[28]]

---

[26] *United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").   The government responds that the defendants have not included Judge Kollar-Kotelly's entire definition from her Findings of Fact and Conclusions of Law, which their instruction is taken from.   Rather, Judge Kollar-Kotelly stated that: "First, 'disorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.'). Conduct is 'disruptive' if it 'tend[s] to disrupt some process, activity, condition, etc.' 'Disruptive,' *Merriam-Webster.com Dictionary* (June 16, 2022). As the Court concluded in *Rivera*, even mere presence in an unlawful mob or riot is both (1) 'disorderly' in the sense that it furthers the mob's 'disturb[ing] the public peace' and (2) 'disruptive' insofar as it disturbs the normal and peaceful condition of the Capitol grounds and buildings, its official proceedings, and the safety of its lawful occupants. Were it not, it must be said that continued presence in a mob that is being tear gassed and pepper sprayed is disorderly insofar as a person's continued presence clearly impedes law enforcement's efforts to regain control of a particular area. Additionally, as Captain Mendoza explained, entering a Capitol building without authorization is necessarily '[n]ot according to order and rule,' 'unruly,' and may 'disrupt [Congressional] . . . activity' insofar as Capitol Police would seek out and detain anyone who enters a Capitol building without authorization. Accordingly, the Court concludes that Grider 'engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building.'" *Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24).  The instructions in *Grider* were also issued before the D.C. Circuit's construction of the term "disorderly conduct" in *Alford*.

[27] *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF No. 172 at 27); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 37-38).  The government responds that these cases and their corresponding instructions were all decided prior to the D.C. Circuit's construction of the term "disruptive conduct" in *Alford*.

[28] Redbook 6.643.

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Counts One and Two.  [Proposed by Defendants: Consistent with the defense proposed instruction for Count Two, "knowingly" has the same meaning as proposed by the defense in Count Two.]

e. **Count Four: 40 U.S.C. § 5104(e)(2)(D)**[29]

Count Four of the Indictment charges the defendants with disorderly and disruptive conduct in a Capitol building or grounds, which is a violation of federal law.

### i. Elements

In order to find the defendants guilty of this offense, the government must prove each of the following elements beyond a reasonable doubt:

1.  First, the defendants engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;

2.  Second, the defendants did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3.  Third, the defendants acted willfully and knowingly.

### ii. Definitions

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C. The "Capitol Grounds" are defined by the United States Code, which refers to a 1946 map on file in the Office of the Surveyor of the District of Columbia.  The boundaries of the Capitol Grounds include all additions added by law after that map was recorded. The Capitol Grounds includes the portion of Pennsylvania Avenue Northwest from the west curb of First Street Northwest to the curb of Third Street Northwest.

The term "disrupt the orderly conduct" has the same meaning described in the instructions for Count Three defining "disorderly conduct" and "disruptive conduct."

---

[29] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Jenkins*, 21-cr-245 (APM) (ECF No. 78 at 31); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 40); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 28); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 10-11).

For purposes of this offense, "the orderly conduct of a session of Congress or either House of Congress" includes the actions of Congress' Joint Session to certify the Electoral College vote.[30]

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[31]

The term "knowingly" has the same meaning described in the instruction for Count One.

## V.  Expert Witnesses

Neither the prosecution nor the defense plan to call expert witnesses.

## VI.  Motions in Limine

The Defendants have filed the following motions *in limine*:

1.  Joint Motion *in limine* to Preclude Use of Inflammatory Labels (ECF 35)

2.  Joint Motion *in limine* to Preclude Video Montage Exhibits (ECF 36)

The Government has filed the following motions *in limine*:

1.  Motion *in limine* Regarding Cross-Examination of USSS Witnesses (ECF 37)

2.  Motion *in limine* to Preclude Improper Defense Arguments and Evidence (ECF 38)

## VII.  Prior Convictions

The Government will not introduce prior convictions at trial.

## VIII.  Government Exhibits

The Government has attached its exhibit list as Attachment 1.  This exhibit list is subject to change and represents the Government's good faith efforts to fully comply with the Court's Pre-Trial Scheduling Order.

---

[30] *See United States v. Kelly*, 21-cr-708 (RCL) ECF No. 101 at 17.

[31] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

## IX.    Stipulations

The government has proposed some stipulations, which the defendants are now considering.   The parties will update the Court on the progress of stipulations at the pretrial conference.   The parties will also continue to cooperatively discuss stipulations to expedite the presentation of evidence.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **CASE NO. 23-cr-339 (ACR)** |
| **ETHAN MAUCK (1)** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**PROPOSED VERDICT FORM**

Count 1:        Civil Disorder (18 U.S.C. § 231(a)(3))

_____ Not Guilty            _____ Guilty

Count 2:        Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1))

_____ Not Guilty            _____ Guilty

Count 3:        Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2))

_____ Not Guilty            _____ Guilty

Count 4:        Disorderly Conduct in a Capitol Building or Grounds (40 U.S.C. § 5104(e)(2)(D))

_____ Not Guilty            _____ Guilty

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **CASE NO. 23-cr-339 (ACR)** |
| **PETER WILLEY (2)** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**PROPOSED VERDICT FORM**

Count 1:      Civil Disorder (18 U.S.C. § 231(a)(3))

_____ Not Guilty              _____ Guilty

Count 2:      Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1))

_____ Not Guilty              _____ Guilty

Count 3:      Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2))

_____ Not Guilty              _____ Guilty

Count 4:      Disorderly Conduct in a Capitol Building or Grounds (40 U.S.C. § 5104(e)(2)(D))

_____ Not Guilty              _____ Guilty

21

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


BY: /s/ *Julie Bessler*
JULIE BESSLER
Assistant United States Attorney
PA Bar No. 328887
601 D Street N.W.
Washington, D.C. 20530
(202) 809-1747
Julie.Bessler@usdoj.gov

CRAIG ESTES
Assistant U.S. Attorney
Mass. Board of Bar Overseers #670370
Capitol Siege Section Detailee
U.S. Attorney's Office
District of Massachusetts
(617) 748-3100
Craig.Estes@usdoj.gov

MATTHEW E. VIGEANT
Assistant United States Attorney
D.C. Bar No. 144722
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Matthew.Vigeant@usdoj.gov

FOR ETHAN MAUCK

MARY MAGUIRE
Federal Public Defender
For the Western District of Virginia


/s/_____
BEATRICE F. DIEHL
Florida Bar No. 0124667
Office of the Federal Public Defender
For the Western District of Virginia
210 First Street SW, Suite 400
Roanoke, VA 24011
(540) 777-0891



FOR PETER WILLEY

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/*_____
DIANE SHREWSBURY
MARIA JACOB
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.,
Suite 550
Washington, D.C. 20004
(202) 208-7500