UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 23-cr-00339 (ACR) |
| v. : | |
| : | |
| ETHAN MAUCK, and : | |
| PETER WILLEY : | |
| : | |
| Defendants. : | |

**SUPPLEMENTAL BRIEFING REGARDING 18 U.S.C. § 1752**

The Court directed the parties to brief two questions: (1) whether the rule of lenity applies in determining the mens rea required under 18 U.S.C. § 1752; and (2) what weight, if any, should be given to the fact that the statute's federal-protectee element is set out in a definition (18 U.S.C. § 1752(c)(1)(B)), as opposed to the statute's lead prohibitions in § 1752(a)(1) through (5).

As explained below, the rule of lenity should play no role in resolving the mens rea question presented in this case. The Supreme Court has repeatedly emphasized that lenity comes into play "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016). Here, as explained at the hearing and in the government's past briefing, the text, structure, context, and history of Section 1752 establish that the federal-protectee requirement is jurisdictional under *United States v. Feola*, 420 U.S. 671 (1975). Nor is the defendant's reading supported by the fact that, since 2012, the federal-protectee requirement has been located in a definitional provision. To the government's knowledge, no court of appeals has attributed any analytical significance to that drafting choice for purposes of *Feola*'s jurisdictional inquiry. And no sound reason exists why incorporating an element in a definition—as opposed to some part of the statute—should signify

1

a higher mens rea.  In any event, such an inference would be gravely misplaced with respect to Section 1752, whose historical development forecloses any such theory.

1. Any reliance on the rule of lenity in support of the defendants' preferred reading of Section 1752 is misplaced.  After the ordinary tools of statutory interpretation are applied, Section 1752 is not grievously ambiguous—and certainly no more ambiguous than the statute at issue in *Feola* itself, 18 U.S.C. § 111.  That leaves no role for lenity to play.

The Supreme Court has held, time and again, that lenity is a tool of last resort.  It is not enough for purposes of applying the rule of lenity that the "statute's text, taken alone, permits a narrower construction." *Abramski v. United States*, 573 U.S. 169, 188 n.10 (2014).  It is not enough that a "grammatical possibility" of a different reading exists.  *Caron v. United States*, 524 U.S. 308, 316 (1998).  And it is not enough that there may be "'a division of judicial authority' over [the statute's] proper construction."  *Reno v. Koray*, 515 U.S. 50, 64-65 (1995).  The bar is higher: lenity comes into play only if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *United States v. Castleman*, 572 U.S. 157, 172-173 (2014).[1]

---

[1] *See also, e.g.*, *Pulsifer v. United States*, 601 U.S. 124, 152 (2024) (lenity inapplicable despite "two grammatically permissible readings of the statute when viewed in the abstract"); *Shular v. United States*, 589 U.S. 154, 165 (2020) (finding "no ambiguity for the rule of lenity to resolve" after considering statutory "text and context"); *United States v. Hayes*, 555 U.S. 415, 429 (2009) (lenity inapplicable since there was no grievous ambiguity after consulting the text, context, and purpose); *Muscarello v. United States*, 524 U.S. 125, 138-139 (1998) (same); *United States v. Wells*, 519 U.S. 482, 499 (1997) (same); *United States v. Shabani*, 513 U.S. 10, 17 (1994) (lenity inapplicable "after consulting traditional canons of statutory construction"); *Smith v. United States*, 508 U.S. 223, 239 (1993) (lenity is "reserved for cases where, 'after seizing every thing from which aid can be derived'" the statute is still ambiguous (internal quotation marks and alterations omitted)); *Moskal v. United States*, 498 U.S. 103, 108 (1990) (lenity only applies where reasonable doubt exists "after resort to the language and structure, legislative history, and motivating policies of the statute" (internal quotation marks omitted)); *Callanan v. United States*, 364 U.S. 587, 596 (1961) (lenity "comes into operation at the end of the process of construing what Congress has expressed").

Here, as explained orally and in the government's briefing in other January 6 cases,[2] the text, structure, context, and history of Section 1752 remove any genuine—let alone grievous—ambiguity about the mens rea issue raised by the defense.  And that conclusion is even more unmistakable if one considers that—despite repeatedly amending Section 1752 since the Supreme Court issued its decision in *Feola*—Congress never gave any indication that it intended to flip the presumption against mens rea applicable to jurisdictional elements.  *See Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 700 (2022) (courts "generally assume[] that, when Congress enacts statutes, it is aware of [the Supreme Court's] relevant precedents.").  The abstract possibility that, after ignoring *Feola* and its decades-long progeny, a different view of the text might be grammatically possible leaves no role for lenity to play.

2. At the August 28 hearing, the government explained that Section 1752 has a similar structure to the statute in *Rehaif v. United States*, 588 U.S. 225 (2019)—where the Supreme Court explained that 18 U.S.C. § 924(a)(2) (2019)'s knowledge requirement did *not* extend to the jurisdictional elements of § 922(g), *id.* at 230—and thus warrants a similar analysis.  Specifically, Section 1752(a), like 18 U.S.C. § 924(a)(2) (2019), criminalizes certain "knowing" conduct (*i.e.*, the entering or remaining without lawful authority in a restricted building or grounds).  And Section 1752(c)(1), like Section 922(g), defines—in a separate provision—the contours of the offense by: (i) defining the substance of the prohibited conduct (*i.e.*, that the trespassed building or grounds must be "posted, cordoned off, or otherwise restricted"); and (ii) limiting the offense to instances implicating a federal nexus ("of a building or grounds where the President or other person protected by the Secret Service or will be temporarily visiting"), 18 U.S.C. § 1752(c)(1)(B).

---

[2] As an example, recent briefing from *United States v. Meachem*, 23-cr-287 (JDB), is attached, which presents the government's position.  The relevant portion is located at pages 1-29.

It follows that, as in *Rehaif*, the statute's text and structure pose no bar to finding the federal-protectee requirement jurisdictional. During the August 28 hearing, the Court queried whether it was significant that § 1752(c)(1)(B) is drafted as a definition. The answer is no.

There is no sound reason, in law or logic, why a definitional provision should be treated differently for purposes of discerning its elements' jurisdictional status under *Feola*. Begin with the law. The government is not aware of any precedential decision holding that *Feola*'s teachings apply less forcefully to definitional sections. And *Feola* itself undermines that possibility. In *Feola*, too, the operative provision (*i.e.*, 18 U.S.C. § 111) incorporated the federal-nexus element (*i.e.*, the victim-officer's federal status) by way of a separate definition in a different provision, 18 U.S.C. § 1114. *See Feola*, 420 U.S. at 673 n.1 (quoting statute). The Supreme Court attributed no significance to that drafting choice. The same should be true here. *Accord United States v. Morgan*, 45 F.4th 192, 209 (D.C. Cir.), *cert. denied*, 143 S. Ct. 510 (2022) (reasoning that a presumption of mens rea did not apply to the age element of 18 U.S.C. § 2423(b), which § 2423(b) incorporates via the defined phrase "illicit sexual conduct" in § 2423(f)).

Nor would applying different mens rea rules to "definitional" elements make sense as a matter of first principles. When Congress defines a term and then uses that term in a statute, its directive is clear: it tells the courts that, in applying the statute, they must insert the term's definition in lieu of the defined term. So here, if one inserts the definition of "restricted building or grounds" from § 1752(c)(1)(B) into § 1752(a)(1), the statute applies to "whoever—

> knowingly enters or remains in any [posted, cordoned off, or otherwise restricted area … (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting …] without lawful authority to do so.

§ 1752(a)(1), (c)(1). Had Congress drafted Section 1752(a)(1) this way, there could be no doubt that *Feola*'s jurisdictional inquiry applies with full force to the bracketed language—precisely as

4

it applied to Section 111 in *Feola* itself.  There is no reason why the same analysis should not apply with equal force to Section 1752, just because the same text is set out in a separate definition.

In any event, whatever its merit in the abstract, applying a watered-down version of *Feola* in this case—assertedly on account of Section 1752(c)(1)(B)'s "definitional" status—would contravene the upshot of Section 1752's history.  From the time Section 1752 was first enacted in 1971 until 2012, the federal-protectee element was part of the statute's operative provision—not of a definitional provision.  *Compare* Pub. L. 91-644, § 13, 84 Stat. 1880, 1891-1892 (1971) ("It shall be unlawful for any person or group of persons … willfully and knowingly to enter or remain in any posted, cordoned off, or otherwise restricted area where the President is or will be temporarily visiting"), *with* Pub. L. 109-177, § 602(a), 120 Stat. 192, (2005) (same, except that the protectee could also be another "person protected by the Secret Service").  It was only in 2012 that Congress moved the federal-protectee requirement—along with the definition of "restricted buildings or grounds"—to a separate definitional provision: subsection 1752(c)(1)(B).

Nothing about the 2012 amendments suggests that Congress intended to dramatically alter Section 1752's mens rea, as defendants' view would imply.  Congress' objective in 2012 was modest: to "correct and simplify" the statute, and to "clarif[y] that the penalties in Section 1752 of title 18 apply to those who knowingly enter or remain in any restricted building or grounds without lawful authority to do so."  H.R. Rep. No. 112-9, at 1-2.  Far from increasing the applicable mens rea, the 2012 amendments did the opposite: they *lowered* the statute's mens rea by removing the requirement that violations be "willful[]."  There is, therefore, no basis to suppose that Congress intended to dramatically and silently increase the statute's mens rea, let alone do so while simultaneously decreasing the statute's mens rea explicitly.  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress … does not … hide elephants in mouseholes.").

Date: September 3, 2024                    Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            United States Attorney
                                            D.C. Bar No. 481052

                       By:    */s/ Craig Estes*
                               CRAIG ESTES
                               Assistant United States Attorney
                               United States Attorney's Office for the
                               District of Massachusetts (detailee)
                               craig.estes@usdoj.gov
                               (617) 748-3100

                               */s/ Julie Bessler*
                               JULIE BESSLER
                               Assistant United States Attorney
                               United States Attorney's Office for the
                               District of Columbia
                               Julie.Bessler@usdoj.gov
                               (202) 809-1747

                               */s/ Matthew Vigeant*
                               MATTHEW VIGEANT
                               Assistant United States Attorney
                               United States Attorney's Office for the
                               District of Columbia
                               Matthew.Vigeant@usdoj.gov
                               (202) 252-2423

                               */s/ Francesco Valentini*
                               FRANCESCO VALENTINI
                               Assistant United States Attorney
                               United States Attorney's Office for the
                               District of Columbia
                               Francesco.Valentini@usdoj.gov
                               (202) 834-0896

## **CERTIFICATE OF SERVICE**

       On this 3rd day of September, 2024, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

                                              */s/ Craig Estes*
                                              Craig Estes
                                              Assistant U.S. Attorney (detailee)